**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LPL FINANCIAL LLC, JARED BRYCE ROSKELLEY, KYLE LEE ROBERTSON, and MATTHEW JOSEPH TINYO,**

***Petitioners,***

**Case No. 8:26-cv-02772**

**v.**

**SHUMAKER, LOOP & KENDRICK, LLP,**

***Respondent.***

**TIME -SENSITIVE PETITION TO COMPEL COMPLIANCE WITH ARBITRAL SUBPOENA PURSUANT TO 9 U.S.C. § 7**

Petitioners LPL Financial LLC ("LPL"), Jared Bryce Roskelley, Kyle Lee Robertson, and Matthew Joseph Tinyo ("Advisors," and with LPL, "Petitioners") respectfully petition this Court for an order compelling Respondent Shumaker, Loop & Kendrick, LLP ("Shumaker") to comply with a Subpoena *Duces Tecum* issued by a FINRA arbitration panel in *Ameriprise Financial Services, LLC v. Roskelley, et al.*, FINRA Case No. 25-00296. This Petition is time-sensitive in that a ruling on this Petition is needed before the arbitration hearing on November 6, 2026 commences. This Petition is supported by the Declaration of Alexander H. Park, filed concurrently herewith.

## I. Introduction

Petitioners ask this Court to compel compliance with a validly issued arbitral subpoena (the "Subpoena"). The recipient of the arbitral Subpoena is Shumaker, a law firm in this District. Shumaker is refusing to comply with Subpoena and there is no legitimate basis for Shumaker's refusal.

The Subpoena was issued by the arbitration panel (the "Panel") in an action brought by Ameriprise Financial Services, LLC against the Advisors and LPL (the "Arbitration"). The Subpoena seeks documents and communications relating to Shumaker's conflicted representation of Ameriprise in the Arbitration and of the Advisors in a prior matter. Specifically, in October 2023, the Advisors joined Ameriprise from another broker-dealer. Ameriprise retained Shumaker to represent the Advisors in connection with their transition to Ameriprise from the other broker-dealer. (Park Decl. ¶¶ 6–8.) Thirteen months later, the Advisors departed Ameriprise for LPL. Ameriprise then brought the Arbitration against the Advisors and LPL, alleging claims in connection with the Advisors' transition from Ameriprise to LPL. Ameriprise hired Shumaker—the Advisors' own former counsel on their transition to Ameriprise—to prosecute these claims.

Shumaker took the engagement without addressing the evident conflict. It did not screen the lawyers from Shumaker who had previously represented the Advisors. To the contrary, the lead attorney for Ameriprise on the Arbitration was the same lawyer listed as the Advisors' counsel on the resignation letters that the Advisors sent to their former broker-dealer when they joined Ameriprise. Neither

Shumaker nor Ameriprise sought a conflict waiver from the Advisors—indeed, they raised no conflict issue at all. Only after the Advisors discovered that their prior counsel was the law firm prosecuting these claims and demanded Shumaker's withdrawal did Shumaker step aside as counsel in the Arbitration.

Ameriprise's hire of conflicted counsel has become a central issue in the Arbitration. The Panel therefore issued the Subpoena to Shumaker to uncover the full scope of its conflicted representation. The Panel granted the Subpoena over Ameriprise's objections. The Panel also twice overruled Shumaker's objections to the Subpoena. Moreover, the Panel expressly found that "the materials and testimony being sought were both relevant and material to issues that have been raised in this arbitration" and ordered compliance with the Subpoena. (Park Decl. ¶ 26, Ex. E.) Shumaker, however, refuses to comply. This petition follows.

## II. Statement of Facts

### A. Ameriprise Retains Shumaker to Represent the Advisors (Fall 2023)

The Advisors—Jared Roskelley, Kyle Robertson, and Matthew Tinyo—are financial advisors who together manage approximately $285 million in client assets. In October 2023, they transitioned from Raymond James to Ameriprise. As is standard industry practice, Ameriprise retained outside counsel to represent the Advisors in connection with that transition. The recruiting firm typically connects advisors with outside counsel to provide unconflicted legal advice on resignation procedures, restrictive covenant compliance, and client transition protocols.

The outside counsel that Ameriprise retained to represent the Advisors on their transition from Raymond James to Ameriprise was Shumaker. Shumaker counseled the Advisors on two transitions issues that are central to this Arbitration. First, Shumaker advised them on how to leave Raymond James and join Ameriprise without incurring liability—specifically, by invoking the Protocol for Broker Recruiting (the "Broker Protocol"). The Broker Protocol is a covenant among securities-industry participants not to sue departing advisors who follow a specific procedure: the advisor provides a resignation letter and a list of clients (including names, addresses, phone numbers, email addresses, account titles, and account numbers) to a supervisor at the prior firm, and may retain only that same list, without account numbers, at the new firm. On Shumaker's advice, the Advisors invoked the Broker Protocol when leaving Raymond James. Their resignation letters to Raymond James identified Michael S. Taaffe of Shumaker as their counsel and informed recipients to contact him in the event of any dispute over their departure under the Broker Protocol. (Park Decl. ¶ 7.) The Advisors subsequently invoked the Broker Protocol when leaving Ameriprise for LPL, which is one of the Advisors' defenses to Ameriprise's claims in the Arbitration.

Second, Shumaker counseled the Advisors on their rights to maintain client information in cloud-based third-party databases, which were not held on either Raymond James' or Ameriprise's systems. Shumaker negotiated agreements with Ameriprise that expressly permitted the Advisors to continue maintaining client information in those databases. (Park Decl. ¶ 8.) These databases and the

agreements governing them are also one of the Advisors' defenses in the Arbitration.

**B. The Advisors' Departure from Ameriprise (January 2025)**

On January 27, 2025, the Advisors resigned from Ameriprise and joined LPL. As when they joined Ameriprise, they invoked the Broker Protocol. They departed exactly as they had arrived: under the Broker Protocol and its protections for departing advisor's retention of certain client information. (Park Decl. ¶ 9.) They also continued to maintain client information in the third-party databases, as their agreements with Ameriprise permitted them to do.

**C. Ameriprise Hires the Advisors' Own Counsel to Sue Them**

Two weeks later, on February 11, 2025, Ameriprise filed suit. Ameriprise lodged a Complaint and Motion for Temporary Restraining Order against the Advisors and LPL in the United States District Court for the District of Arizona. *See Ameriprise Fin. Servs., LLC v. Roskelley*, No. 2:25-cv-00340-DGC (D. Ariz.). At the same time, Ameriprise commenced the Arbitration by filing a Statement of Claim in FINRA's Dispute Resolution forum, where the parties are required to arbitrate their underlying dispute. (Park Decl. ¶ 10.)[1]

[1] Ameriprise, the Advisors, and LPL are required under the rules of the Financial Industry Regulatory Authority (FINRA)—the self-regulatory organization overseen by the SEC that is principally responsible for the registration and supervision of broker-dealers and associated persons, of which Ameriprise and LPL are members—to arbitrate nearly all disputes arising out of their securities business in FINRA's Dispute Resolution forum. *See* FINRA Rule 13200. A narrow exception exists, however, for a party to seek temporary injunctive relief in court to preserve the status quo before the arbitration. *See* FINRA Rule 13804.

Shumaker appeared as counsel for Ameriprise in both the district court matter and the Arbitration. Shumaker attorney Michael Taaffe—the same attorney identified as the Advisors' counsel in their resignation letters to Raymond James—appeared as lead counsel for Ameriprise. Neither Shumaker nor Ameriprise disclosed Shumaker's prior representation of the Advisors. Neither sought a conflict waiver from the Advisors. In fact, they said nothing at all about the conflict until the Advisors discovered it themselves. (Park Decl. ¶ 11.)

In its lawsuit before the district court, Ameriprise claimed the Advisors had failed to comply with the Broker Protocol—the very agreement Shumaker had counseled them on—and had improperly retained client information from Ameriprise's systems. Ameriprise makes the same claims in the Arbitration. The Advisors contend they complied with the Broker Protocol in full and retained no information from Ameriprise's systems; the client data they maintained resided in third-party databases they had used for years, subject to agreements Shumaker negotiated on their behalf. On February 25, 2025, the district court denied Ameriprise's motion for a temporary restraining order and closed the case. The parties proceeded with the Arbitration.

### D. Shumaker Withdraws and Discovery Reveals an Ameriprise-Shumaker Backchannel

On June 16, 2025, counsel for the Advisors sent Shumaker a letter raising the conflict of interest. On July 1, 2025, Shumaker withdrew as counsel for Ameriprise in the Arbitration. (Park Decl. ¶ 13.)

Petitioners have since sought discovery from both Ameriprise and Shumaker concerning Ameriprise's retention of Shumaker to sue them: what Shumaker told Ameriprise about its legal advice to the Advisors, and what use (if any) Ameriprise made of that information in bringing its suit. The Advisors first requested their "client file" from Shumaker under Florida Bar Rule 4-1.16(d). Shumaker produced 47 files—but no engagement letter, nothing outlining the scope of representation, and nothing concerning the third-party database agreements. (Park Decl. ¶ 14.)

Petitioners next sought discovery from Ameriprise. Ameriprise conceded that no privilege attached to its communications with Shumaker during the 2023 period when Shumaker represented the Advisors—because Shumaker was not Ameriprise's counsel then. (Park Decl. ¶ 15.) Ameriprise thus produced certain of these communications, which revealed that despite the fact that Shumaker represented only the Advisors, Shumaker was simultaneously reporting to Ameriprise, sharing work product with Ameriprise, and taking strategic direction from Ameriprise's in-house legal department. For instance, Shumaker attorneys sent draft resignation letters and client authorization forms to Ameriprise's lawyers *before* providing them to their clients. None of these communications appeared in the "client file" Shumaker produced. (Park Decl. ¶¶ 17.)

### E. The Panel Issues a Subpoena Ordering a Shumaker Representative to Appear and Bring Documents

This discovery raised more questions than it answered. Neither Shumaker nor Ameriprise has produced the engagement letter. Neither has produced

anything concerning the third-party database agreements, which Shumaker negotiated on the Advisors' behalf. Neither has explained how they navigated (or failed to navigate) the conflict created by Ameriprise's hiring of Shumaker to sue Shumaker's own former clients. Petitioners determined that only a complete document production directly from Shumaker could fill these critical gaps.

Accordingly, on March 27, 2026, Petitioners moved for the Panel to authorize a subpoena to Shumaker. Ameriprise opposed. (Park Decl. ¶ 18.) On May 1, 2026, the Panel granted the motion and issued a subpoena directing Shumaker to produce documents within 30 days. (Park Decl. ¶ 19, Ex. A.) Shumaker filed an objection, contending that Section 7 of the FAA does not permit document-only subpoenas to non-parties and that any production must occur at an in-person hearing. Shumaker further contended that the documents sought were irrelevant and immaterial to the dispute. On May 29, 2026, the Panel issued an order confirming "this panel does have the authority to issue subpoenas to non-parties" and that "the documents requested in the subpoena, if they exist, appear to be relevant and material to the issues being raised in this arbitration." (Park Decl. ¶ 21, Ex. B.) The Panel directed that a motion for a revised subpoena be filed to address Shumaker's demand for an in-person hearing. Petitioners thus filed a renewed motion requesting a hearing-based subpoena in Sarasota, Florida—where Shumaker is located—before a Panel member. Ameriprise again opposed. On July 22, 2026, the Panel granted Petitioners' renewed motion and issued the Subpoena, which is the subject of this petition. The Subpoena directs Shumaker to appear

and produce documents at a hearing before the Panel Chairperson in Sarasota on November 6, 2026. (Park Decl. ¶ 23, Ex. C.)

Notwithstanding the Panel's order, on August 7, 2026, Shumaker filed written objections to the Subpoena, asserting privilege, lack of relevance, burden, and arguments about the nature of the proceeding. (Park Decl. ¶ 25, Ex. D.) Further, on August 17, 2026, Ameriprise filed its own brief in support of Shumaker's objections. On August 24, 2026, the Panel issued an order overruling Shumaker's objections in their entirety and re-confirming that "the materials and testimony being sought were both relevant and material to issues that have been raised in this arbitration." (Park Decl. ¶ 26, Ex. E.)

In sum: Petitioners, Ameriprise, and Shumaker have submitted more than a dozen filings concerning the propriety of a subpoena to Shumaker for the materials at issue. The Panel has ruled four times—on May 1, May 29, July 22, and August 24, 2026—and each time it has found the discovery warranted. The operative Subpoena directs a Shumaker representative to appear at a hearing in Sarasota on November 6, 2026, and to produce the requested documents at that hearing. The Panel Chairperson will be present in person to receive the testimony and documents.

Following the Panel's August 24 order, Petitioners' counsel contacted Shumaker to confirm whether it would comply. Petitioners' counsel asked for a response from Shumaker by the close of business on August 27, and stated that in light of Shumaker's prior objections and position taken regarding the Subpoena,

Petitioners would construe any response other than express, unconditional confirmation of full compliance—including silence, a qualified or conditional response, or a reservation of the right to seek judicial relief in lieu of compliance—as a refusal to obey the Subpoena within the meaning of 9 U.S.C. § 7. Shumaker did not respond by August 27 and has not responded to date. (Park Decl. ¶ 27, Ex. F.)

## III. Legal Standard

Under Section 7 of the FAA, an arbitrator "may summon in writing any person to attend before them . . . as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. "[I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person . . . or punish said person . . . for contempt[.]" *Id.*

When a party seeks to compel attendance of a witness under Section 7, the district court's role is highly circumscribed. The court does not second-guess the arbitrators, evaluate whether the subpoena seeks relevant documents, or opine on the propriety of the discovery sought. The court's role is purely mechanical: to confirm the subpoena is validly issued and then compel compliance. *See, e.g.*, *Stanton v. Paine Webber Jackson & Curtis, Inc.*, 685 F. Supp. 1241, 1241 (S.D. Fla. 1988) ("The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, sets forth the district

courts' powers to enforce arbitration agreements. Nothing in the Act contemplates interference by the court in an ongoing arbitration proceeding."); *First Pres. Capital, Inc. v. Smith Barney, Harris Upham & Co.*, 939 F. Supp. 1559, 1563 (S.D. Fla. 1996) ("Deference given to arbitrators' decisions accompanies not only a review of the final order itself, but also arbitrators' decisions 'to control the order, procedure and presentation of evidence.'") (quoting *Nitram Inc v. Indus. Risk Insurers*, 848 F. Supp. 162, 165 (M.D. Fla. 1994)).

## IV. This Court Has Subject-Matter Jurisdiction

Section 7 of the FAA does not itself "create subject matter jurisdiction in a U.S. district court." 2 Commercial Arbitration § 69:19 (Judicial enforcement of subpoena—Jurisdiction). A party must therefore establish that the federal court it is petitioning independently has subject-matter jurisdiction over the dispute. Here, the Court has subject-matter jurisdiction both because the underlying dispute raises a federal question and because diversity jurisdiction exists under 28 U.S.C. § 1332. Ameriprise brought a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, presenting a federal question that creates subject-matter jurisdiction. *See* Complaint (ECF No. 1) ⁋ 25, *Ameriprise Fin. Servs., LLC v. Roskelley, et al.*, No. 2:25-cv-00455-SMB (D. Ariz.) ("Further, Federal Question jurisdiction also exists under 28 U.S.C. § 1331 as Plaintiff's claims include a claim under 18 U.S.C. § 1839(6) [*sic*].").

Diversity jurisdiction also exists. Courts in this Circuit are split on whether diversity should be determined by reference to the parties and amount in

controversy in the underlying arbitration or to the petitioner and subpoenaed witness in the enforcement action. *Compare Shirvanian v. Byers*, No. 16-62506-CIV, 2016 WL 11754322 (S.D. Fla. Sept. 22, 2016) ("[D]iversity is undeniably present in the arbitration proceeding.") *with Schottenstein v. Wells Fargo Bank, N.A.*, No. 20-mc-81924, 2020 WL 7399003, at *4 (S.D. Fla. 2020) (holding "the relevant inquiry is . . . whether the parties to the federal court action are diverse").

The intra-Circuit split is immaterial here, because diversity exists under either test. As to the parties to this Petition: the Advisors are citizens of Arizona. LPL is a limited liability company organized under the laws of California and headquartered in California. LPL's sole member, LPL Holdings, Inc., is a corporation organized under the laws of Massachusetts with its principal place of business in California. Shumaker is a limited liability partnership with offices in Florida, Minnesota, North Carolina, Ohio, South Carolina, and Washington D.C.

Looking to the arbitration brought by Ameriprise against LPL and the Advisors, Ameriprise is a limited liability company organized under the laws of Delaware and headquartered in Minnesota. Ameriprise's sole member, AMPF Holding Corporation, is a corporation organized under the laws of Michigan with its principal place of business in Minnesota. In either case, diversity is satisfied.

The amount in controversy is also satisfied under either analysis. Ameriprise seeks more than $75,000 in the underlying arbitration. *See* Complaint (ECF No. 1) ⁋ 19, *Ameriprise Fin. Servs., LLC v. Roskelley, et al.*, No. 2:25-cv-00455-SMB (D. Ariz.) ("[T]he amount in controversy is in excess of $75,000.").

And the documents sought here are material to defending that claim, thus making the amount-in-controversy in this action more than $75,000. *See_Maine Cmty. Health Options v. Albertsons Companies, Inc.*, 993 F.3d 720, 723 (9th Cir. 2021) ("[T]he amount in controversy can be established by a 'good faith' allegation of the value of the subpoenaed information to the plaintiff in the underlying arbitration dispute."); *accord Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 135 (2d Cir. 2020) ("WNIC sought an arbitral award of $134 million. The documents responsive to the summonses that are the subject of this section 7 petition are relevant to whether WNIC is entitled to all or part of that award. . . . It does not appear to a legal certainty that the amount is really for less because even if the documents required by the summonses pertain to only a small fraction of the award sought, the amount in controversy requirement would still be satisfied.") (quotation marks, alteration omitted). Moreover, the documents may also support counterclaims for malicious prosecution or a separate action for malpractice, each of which would seek more than $75,000 in damages. That, too, satisfies the amount-in-controversy requirement. *See Maine Cmty. Health Options*, 993 F.3d at 722 ("[T]he amount in controversy in a Section 7 enforcement action can be measured by either the benefit to the plaintiff or the detriment to the defendant that would result from enforcement of the subpoena.").

## V. Legal Argument

### A. The Subpoena Is Validly Issued and Served

Section 7 authorizes arbitrators to compel witnesses to "attend before them or any of them as a witness" and to bring documents "which may be deemed material as evidence in the case." 9 U.S.C. § 7. The Subpoena here commands a Shumaker representative to appear at a hearing before the Panel Chairperson on November 6, 2026, in Sarasota, Florida, and to bring specified documents. Section 7 also requires that the summons "shall be signed by the arbitrators," "shall be directed to" the witness, and "shall be served in the same manner as subpoenas to appear and testify before the court." *Id.* Each element is satisfied.

First, the Subpoena is signed by all three arbitrators on the Panel and is directed to Shumaker, Loop & Kendrick LLP. (Park Decl. ¶ 24, Ex.C.) As to service, under Federal Rule of Civil Procedure 45(b), service of a non-party subpoena to appear and testify in court is accomplished through "delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1). Here, a process server served the Subpoena on Shumaker by hand-delivering the subpoena to Shumaker's office at 240 South Pineapple Avenue, Sarasota, Florida 34236. (Park Decl. ¶¶ 28–30, Ex. G.) The server also tendered a check for $60, consisting of $40.00 for one day's attendance and $20 for roundtrip mileage reimbursement under 28 U.S.C. § 1821(b)&(c).

The Subpoena was thus both validly issued and validly served. The requirements of Section 7 are satisfied.

**B. This Court Has the Power to Enforce the Subpoena**

Section 7 provides that when a person summoned by an arbitral subpoena "neglects or refuses to obey" the subpoena, "the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person." 9 U.S.C. § 7. The Panel Chairperson has scheduled a hearing for November 6, 2026, in Sarasota, Florida—within this District—and will be physically present in Sarasota for that hearing. (Park Decl. ¶ 31.) The Chairperson will thus be "sitting" in this District for purposes of receiving the subpoenaed documents and testimony. *See Zwick v. Prickel*, No. 3:26-mc-80072-WHO, 2026 WL 2401923 (N.D. Cal. May 22, 2026) ("Section 7 does not preclude arbitrators from sitting in more than one location to gather any material evidence.").

This Court is thus the appropriate court to compel compliance under Section 7. Federal Rule of Civil Procedure 45(c)(1)(A) provides that a non-party witness may be compelled to attend a hearing within 100 miles of where they reside, are employed, or regularly transact business. As noted, Shumaker is located at 240 South Pineapple Avenue, Sarasota, Florida 34236—within this District and well within 100 miles of the courthouse. And for that same reason, this Court also has personal jurisdiction over Shumaker.

**C. Shumaker Has Refused to Comply**

Section 7 authorizes this Court to act "[i]f any person or persons so summoned to testify shall refuse or neglect to obey said summons." 9 U.S.C. § 7. Shumaker's refusal is unambiguous.

In its August 7, 2026 objections, Shumaker expressly stated that it would "oppose enforcement on the ground that the proceeding is a discovery hearing" and reserved "all rights to seek such relief" in federal court. (Park Decl. ¶ 25, Ex. D.) This is not an ambiguous position. Shumaker has stated in writing that it will resist compliance and litigate rather than obey the Panel's subpoena. After receiving the Panel's August 24 order overruling Shumaker's objections, Petitioners' counsel contacted Shumaker to confirm its position. Shumaker did not respond.

Judicial intervention is the only remaining mechanism to compel compliance. Moreover, time is of the essence, because the hearing is scheduled for November 6, 2026. Without this Court's intervention, the proceeding will be rendered meaningless—Shumaker will refuse to appear, the Panel cannot compel compliance on its own, and Petitioners will be denied access to evidence that the Panel has found to be relevant and material to the Arbitration. Delay prejudices Petitioners' ability to prepare for the merits hearing in that matter.

**D. Shumaker's Objections Lack Merit**

Petitioners anticipate Shumaker will raise several objections: (i) that this Court lacks enforcement jurisdiction because no arbitrator is "sitting" in this

District; (ii) that the Subpoena is unenforceable because only a single arbitrator will travel to Sarasota; (iii) that Section 7 does not authorize "discovery" subpoenas; (iv) that the Subpoena seeks privileged material; and (v) that the Subpoena is invalid because it is directed to a law firm rather than a natural person. None has merit.

**1. An Arbitrator Will Be "Sitting" in This District**

Before the Panel, Shumaker's principal objection to the Subpoena was that because the situs of the final evidentiary hearing in the Arbitration is Phoenix, Arizona, the Chairperson cannot be deemed to be "sitting" in Sarasota even if he travels there for the hearing. Not so. Section 7's "sitting" requirement refers to where the arbitrator is physically located for the proceeding in question—not the permanent seat of arbitration. Magistrate Judge Torres's decision in *Shirvanian v. Byers*, No. 16-62506-CIV, 2016 WL 11754322 (S.D. Fla. Sept. 22, 2016), is directly on point. There, petitioners sought to enforce an arbitral subpoena where the underlying arbitration was in California but the arbitrators had committed to convene in Florida to take testimony and receive documents. The respondent argued the subpoena was unenforceable because Section 7 vests enforcement jurisdiction in "the United States district court for the district in which such arbitrators, or a majority of them, are sitting" and "the arbitration panel is presently sitting in California." *Id.* at *2 (quoting 9 U.S.C. § 7). Citing substantial supporting authority, Magistrate Judge Torres held that "based on the plain language of the statute, Section 7 of the FAA references where the *arbitrators* are

sitting, not where the *arbitration* is sitting." *Id.* at *3 (emphasis in original). As the court concluded, "[b]ecause the arbitrators will travel to Florida, this Court has the authority under the FAA to compel the Respondent to testify under existing law." *Id.* The court also rejected the argument that the arbitrators needed to already be in Florida to compel compliance, finding it sufficient that they planned to convene there on the hearing date. *See id.* at *2.

Section 7's "sitting" requirement thus refers to where the arbitrator is physically located for the proceeding—not the permanent seat of arbitration. *Accord Zwick v. Prickel*, No. 3:26-mc-80072-WHO, 2026 WL 1454305 (N.D. Cal. May 22, 2026) ("Section 7 does not preclude arbitrators from sitting in more than one location to gather any material evidence."). Here, the Panel Chairperson will be physically present in Sarasota, Florida on November 6, 2026 to conduct the hearing. That is where he is "sitting" for Section 7 purposes.

**2. A Single Arbitrator May Issue and Receive the Subpoena**

Shumaker has also argued the Subpoena is unenforceable because only the Chairperson, and not the other two panelists, intends to travel to Sarasota for the November 6 hearing. But Section 7 does not require the entire Panel—or even a majority of the arbitrators—to attend the hearing. A single arbitrator will do. Section 7 states that "[t]he arbitrators selected either as prescribed in this title or otherwise, *or* a majority of them," may issue a summons to a witness to "attend before them *or* any of them"; that the summons "shall issue in the name of the arbitrator *or* arbitrators, *or* a majority of them"; and that "the United States district

court for the district in which such arbitrators, *or* a majority of them, are sitting may compel" attendance. 9 U.S.C. § 7 (emphasis added). Courts consistently recognize that the use of the disjunctive "or" means that a single arbitrator may issue a summons, sign it, and "sit" for the hearing to obtain testimony and documents. *See Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 413 (3d Cir. 2004) (Chertoff, J., concurring) ("Under section 7 of the Federal Arbitration Act, arbitrators have the power to compel a third-party witness to appear with documents before a single arbitrator, who can then adjourn the proceedings."); *Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567, 579 (2d Cir. 2005) ("[T]he provision authorizes the use of subpoenas at preliminary proceedings even in front of a single arbitrator[.]").

**3. Section 7 Authority Is Not Limited to Final Merits Hearings**

Shumaker also argued to the Panel that because the November 6 proceeding is a "discovery hearing," not the final merits hearing, the Subpoena is unenforceable under Section 7. That argument fails too. The authority of an arbitrator to hold a hearing to receive testimony and documents from a non-party witness extends beyond final merits hearings. *See Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008); *Stolt-Nielsen*, 430 F.3d at 577-79.

As then-Judge Chertoff explained in his influential concurrence in *Hay Group*: the question is whether the arbitrator has directed a witness to appear at a hearing—not whether that hearing is the final merits proceeding. *See* 360 F.3d at

413. Here, the Panel Chairperson has directed Shumaker to appear at a hearing. The purpose of the hearing—to receive documents and testimony—is precisely what Section 7 contemplates.

The practical logic is self-evident. If Section 7 were limited to final merits hearings, parties would have no ability to review the documents produced before the hearing. They could not prepare. It would be trial by surprise. And if a non-party failed to appear at the final hearing, there would be no recourse—the hearing would need to be held open indefinitely in hopes of eventually compelling testimony. Congress did not intend such an absurd result.

#### 4. Shumaker's Privilege Objections Do Not Excuse Non-Compliance

Before the Panel, Shumaker also objected that the Subpoena seeks documents and information protected by the attorney-client privilege. To the extent Shumaker re-raises that objection here, it is irrelevant to the Court's analysis. The Panel has already held that the documents sought are "relevant and material" to the arbitration, and it can and will adjudicate any specific privilege objection. The Court's role is not to evaluate and rule on evidentiary objections in an arbitration—doing so would impermissibly interfere with the arbitrators' role. *See, e.g.*, *Odfjell Asa v. Celanese AG*, 348 F. Supp. 2d 283, 287 (S.D.N.Y. 2004), *aff'd sub nom. Stolt-Nielsen SA v. Celanese AG*, 430 F.3d 567 (2d Cir. 2005) ("[S]ection 7 would make no sense if it provided the arbitrators with the power to subpoena witnesses and documents but did not provide them the power to determine related privilege issues."); *Wright v. Nw. Mut. Life Ins. Co.*, No. 4:15-

cv-00041, 2015 WL 507434, at *3 (E.D. Mo. Feb. 6, 2015) ("Defendants assert that the documents and the testimony . . . are absolutely privileged . . . the records should be produced to the Panel at the hearing location as directed by the Panel to allow for the Parties to litigate or resolve any privilege arguments.").

In any event, while the Court need not consider the propriety of any privilege objection, Petitioners note that the objection is meritless for at least three reasons.

***First***, privilege is not a basis to quash a subpoena. It is a basis to withhold specific documents and produce a privilege log. *See O'Toole v. City of Antioch, No. 11-cv-01502-PJH (MEJ), 2015 WL 1848134, at *3 (N.D. Cal. April 14, 2015)* (denying request to quash deposition subpoena entirely and stating that "[a] party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted"). That is exactly what the Panel ordered Shumaker to do: bring a privilege log detailing any documents over which it asserts privilege, along with the underlying documents for *in camera* review if necessary. Shumaker cannot simply declare all documents privileged and refuse to appear.

***Second***, many of the documents sought are not privileged under any theory. Engagement letters, fee arrangements, the identity of clients, the general nature of the representation, and executed agreements between the parties are not privileged. *See* Fla. Stat. § 90.502(4)(a)-(c).

***Third***—and most critically—Shumaker is asserting privilege against *its own former clients*. The client, not the attorney, holds the privilege. *See* Fla. Stat. §

90.502(2) ("A client has a privilege to refuse to disclose . . . confidential communications . . . ."). Here, the Advisors are not asserting privilege—to the contrary, they are affirmatively seeking the documents. The Advisors were Shumaker's clients during the fall 2023 period. The attorney-client privilege attaching to Shumaker's representation of the Advisors during that period belongs to the Advisors—not Ameriprise, and not Shumaker. No legal principle permits an attorney to assert privilege to withhold documents from the very holder of that privilege.

#### 5. The Subpoena May Properly Be Directed to a Law Firm

Shumaker has also argued that the Subpoena is invalid because it is directed to a law firm rather than a natural person. That argument is meritless. Section 7 authorizes arbitrators to "summon in writing any person to attend before them or any of them as a witness." 9 U.S.C. § 7. Nothing in Section 7 limits subpoenas to natural persons. The term "person" in federal law presumptively includes corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals. 1 U.S.C. § 1 (Dictionary Act). A limited liability partnership like Shumaker plainly falls within this definition.

The operative Subpoena here directs "a Shumaker representative" to appear—which is exactly how subpoenas to organizations work: the entity is the addressee, and it designates a representative to testify and produce documents on its behalf, just as under Federal Rule of Civil Procedure 30(b)(6). (Park Decl. ¶ 24, Ex. C.)

This is also how service of process works under the Federal Rules. Rule 45(b)(1) requires service by "delivering a copy to the named person." When an organization is named, service is accomplished by delivering the subpoena to an officer, managing agent, or other authorized representative. *See* Fed. R. Civ. P. 45(b)(1). Accepting Shumaker's argument would mean that arbitrators could never compel document production from an organization—only from the individual humans within it. Congress did not intend such a limitation, and no court has adopted it.

**E. The Subpoenaed Documents Are Material**

Section 7 requires only that the subpoenaed documents "may be deemed material as evidence in the case." 9 U.S.C. § 7. The standard is deliberately broad. Materiality is for the arbitrator to determine, and this Court should not second-guess the Panel's evidentiary judgment. *See In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 871 (8th Cir. 2000) ("Transamerica further contends that § 7 required the district court to make an independent assessment of the materiality of the information sought by Security before acting to compel compliance with the panel's subpoena. . . . We disagree . . . it is antithetical to the well-recognized federal policy favoring arbitration, and compromises the panel's presumed expertise in the matter at hand.").

The Panel has already determined these documents are material. It granted Petitioners' motion, issued the subpoena, and overruled Shumaker's objections. Its August 24, 2026 order expressly found that "the materials and testimony being

sought were both relevant and material to issues that have been raised in this arbitration." That determination was well-founded and is entitled to deference.

Regardless, the materiality of the documents to the Arbitration is self-evident. Among other things, they bear directly on the Advisors' understanding of how they were permitted to transition between firms; on whether Ameriprise knowingly hired conflicted counsel to prosecute claims against the Advisors; and on whether Ameriprise leveraged confidential information from Shumaker's prior representation of the Advisors to frame its claims. These points are relevant to Petitioners' defenses and counterclaims, including Petitioners' position that Ameriprise brought the Arbitration in bad faith.

## VI. CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court enter an order:

(1) Compelling Shumaker, Loop & Kendrick, LLP to comply with the Subpoena by having a representative appear at the November 6, 2026 hearing in Sarasota, Florida and bring with them all documents responsive to the Subpoena; and

(2) Granting such other and further relief as this Court deems just and proper.

**CERTIFICATE OF CONFERRAL**

Pursuant to Local Rule 3.01(g), the undersigned counsel certifies that prior to filing this Petition, counsel for Petitioners conferred with counsel for Shumaker, Loop & Kendrick, LLP (Jarrod Malone, Esq.) in a good-faith effort to resolve the issues raised herein. Shumaker has made clear it will not comply with the Subpoena Duces Tecum and that this Petition is opposed.

Dated: September 21, 2026

Respectfully submitted,

**McGuireWoods LLP**

By: */s/ Sara F. Holladay*
Sara F. Holladay (FBN 26225) (Lead Counsel)
50 North Laura Street, Suite 3300
Jacksonville, Florida 32202
sholladay@mcguirewoods.com
flservice@mcguirewoods.com
(904) 798-3200 | (904) 798-3207 (fax)

-and-

Alexander M. Madrid (motion for *pro hac vice* forthcoming)
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
amadrid@mcguirewoods.com
(412) 667-7919 | (412) 402-4165 (fax)

*Counsel for Petitioner LPL Financial LLC*

-and-

**WEISS BROWN**
Alan S. Baskin (motion for *pro hac vice* forthcoming)
Alexander H. Park (motion for *pro hac vice* forthcoming)
6263 N. Scottsdale Road, Suite 340
Scottsdale, Arizona 85250
(480) 327-6650
alan@weissbrown.com
alex.park@weissbrown.com

*Counsel for Petitioners Jared Roskelley, Matthew Tinyo and Kyle Robertson*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2026, I caused a true and correct copy of the foregoing Verified Petition to Compel Compliance with Arbitral Subpoena to be served upon the following counsel of record by electronic mail:

Jarrod Malone, Esq.
Shumaker, Loop & Kendrick, LLP
240 South Pineapple Avenue
Sarasota, Florida 34236
jmalone@shumaker.com

*/s/ Sara F. Holladay*
Sara F. Holladay