UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| LPL FINANCIAL LLC, JARED BRYCE ROSKELLEY, KYLE LEE ROBERTSON, and MATTHEW JOSEPH TINYO,<br><br>*Petitioners,*<br><br>v.<br><br>SHUMAKER, LOOP & KENDRICK, LLP,<br><br>*Respondent.* | Case No. **8:26-cv-02772** |

DECLARATION OF ALEXANDER H. PARK IN SUPPORT OF PETITION TO COMPEL COMPLIANCE WITH ARBITRAL SUBPOENA PURSUANT TO 9 U.S.C. § 7

I, Alexander H. Park, declare as follows:

1. I am an attorney at Weiss Brown and counsel for Jared Bryce Roskelley, Kyle Lee Robertson, and Matthew Joseph Tinyo (collectively, the "Advisors") in this matter. I submit this declaration in support of Petitioners' Petition to Compel Compliance with Arbitral Subpoena Pursuant to 9 U.S.C. § 7 (the "Petition").

2. My application to appear before the Court *pro hac vice* is currently pending.

3. I have personal knowledge of the facts stated in this declaration except where stated on information and belief, and if called as a witness, I could and would testify competently thereto.

4. I am counsel for the Advisors in the FINRA arbitration captioned *Ameriprise Financial Services, LLC v. Roskelley, et al.*, FINRA Case No. 25-00296 (the "Arbitration").

5. I am familiar with the proceedings in the Arbitration, including all proceedings concerning the Subpoena Duces Tecum issued to Shumaker, Loop & Kendrick, LLP ("Shumaker") (the "Subpoena").

BACKGROUND FACTS

6. In October 2023, the Advisors transitioned from Raymond James to Ameriprise Financial Services, LLC ("Ameriprise"). Ameriprise retained outside counsel to represent the Advisors in connection with their transition. That counsel was Shumaker.

7. Shumaker, through attorney Michael S. Taaffe and others, represented and counseled the Advisors in relation to invoking the Protocol for Broker Recruiting (the "Broker Protocol") when leaving Raymond James. The Advisors' resignation letters identified Mr. Taaffe of Shumaker as their counsel and informed recipients to contact him in the event of any dispute over their departure under the Broker Protocol.

8. Shumaker also counseled the Advisors on their rights to maintain client information in third-party databases.

9. On January 27, 2025, the Advisors resigned from Ameriprise and joined LPL Financial, LLC ("LPL"), again invoking the Broker Protocol.

10. On February 11, 2025, Ameriprise filed a Complaint and Motion for Temporary Restraining Order against the Advisors and LPL in the United States District Court for the District of Arizona. The case is styled as *Ameriprise Fin. Servs., LLC v. Roskelley, et al.*, No. 2:25-cv-00455-SMB (D. Ariz.). Ameriprise simultaneously filed a Statement of Claim in FINRA Case No. 25-00296. Ameriprise's claims include a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, and allege an amount in controversy exceeding $75,000.

11. Shumaker appeared as counsel for Ameriprise in both proceedings. Michael Taaffe—the same attorney who had served as the Advisors' counsel during their October 2023 transition—appeared as counsel for Ameriprise. Neither Shumaker nor Ameriprise disclosed the prior representation to the Advisors or sought the Advisors' consent to Shumaker's adverse representation.

12. On February 25, 2025, the District Court denied Ameriprise's motion for a temporary restraining order and closed the case. The parties proceeded to FINRA arbitration.

13. On June 16, 2025, I sent Shumaker a letter raising the conflict of interest created by Shumaker's representation of Ameriprise against its own former clients. On July 1, 2025, Shumaker withdrew from the Arbitration.

14. As part of that same letter, the Advisors also requested their client file from Shumaker pursuant to Florida Bar Rule 4-1.16(d). Shumaker produced 47 files but did not produce an engagement letter, any document outlining the scope of its representation of the Advisors, or any documents concerning the third-party database agreements Shumaker had negotiated on the Advisors' behalf.

15. In the Arbitration, Ameriprise conceded that no attorney-client privilege attached to its communications with Shumaker during the fall 2023 period when Shumaker represented the Advisors. Ameriprise therefore produced those communications.

16. When Ameriprise produced those communications, they revealed that Shumaker attorneys sent draft resignation letters and client authorization forms to Ameriprise's in-house counsel and sought Ameriprise's approval before giving advice to the Advisors.

17. None of these communications appeared in the client file Shumaker produced to the Advisors pursuant to Florida Bar Rule 4-1.16(d).

## SUBPOENA PROCEEDINGS

18. On March 27, 2026, Petitioners moved for the Panel to authorize a subpoena to Shumaker. Ameriprise opposed the motion.

19. On May 1, 2026, the Panel granted the motion and issued a subpoena directing Shumaker to produce documents within 30 days. A true and correct copy of the Panel's May 1, 2026 order and the original subpoena is attached hereto as Exhibit A.

20. Shumaker objected to the Panel, contending that Section 7 of the Federal Arbitration Act ("FAA") does not permit document-only subpoenas to non-parties and that any production must occur at an in-person hearing. Shumaker further contended that the documents sought were irrelevant and immaterial to the dispute.

21. On May 29, 2026, the Panel issued an order confirming that "this panel does have the authority to issue subpoenas to non-parties" and that "the documents requested in the subpoena, if they exist, appear to be relevant and material to the issues being raised in this arbitration." The Panel ordered that a new motion for a subpoena be filed addressing the time, manner, and method of compliance. A true and correct copy of the Panel's May 29, 2026 order is attached hereto as Exhibit B.

22. Petitioners filed a renewed motion requesting a hearing-based subpoena in Sarasota, Florida—where Shumaker is located—before a Panel member. Ameriprise again opposed.

23. On July 22, 2026, the Panel granted Petitioners' renewed motion and issued a new subpoena (the "operative Subpoena") directing Shumaker to appear and produce documents at a hearing before the Panel Chairperson in Sarasota, Florida on November 6, 2026. A true and correct copy of the Panel's July 22, 2026 order and the operative Subpoena is attached hereto as Exhibit C.

24. The operative Subpoena is signed by all three arbitrators on the Panel and is directed to Shumaker, Loop & Kendrick LLP. It commands a Shumaker representative to appear at a hearing before the Panel Chairperson on November 6, 2026, in Sarasota, Florida, and to bring specified documents.

25. On August 7, 2026, Shumaker filed written objections to the operative Subpoena, asserting privilege, lack of relevance, burden, and arguments about the nature of the proceeding. In its objections, Shumaker expressly stated that it would "oppose enforcement" and reserved "all rights to seek such relief" in federal court. A true and correct copy of Shumaker's August 7, 2026 objections is attached hereto as Exhibit D.

26. On August 17, 2026, Ameriprise filed a brief in support of Shumaker's objections. On August 24, 2026, the Panel issued an order overruling Shumaker's objections in their entirety and confirming that "the materials and testimony being sought were both relevant and material to issues that have been raised in this arbitration." A true and correct copy of the Panel's August 24, 2026 order is attached hereto as Exhibit E.

27. Following the Panel's August 24, 2026 order, counsel for LPL emailed Shumaker's counsel requesting written confirmation by August 27, 2026 of whether Shumaker intended to comply fully with the Subpoena. That correspondence stated that any response other than express, unconditional confirmation of full compliance—including silence, a qualified or conditional response, or a reservation of the right to seek judicial relief in lieu of compliance—would be construed as a refusal to obey the Subpoena within the meaning of 9 U.S.C. § 7. Shumaker did not respond. A true and correct copy of my August 24, 2026 correspondence is attached hereto as Exhibit F.

SERVICE OF THE SUBPOENA

28. On September 18, 2026, Petitioners caused the operative Subpoena to be served on Shumaker by personal delivery to Shumaker's office at 240 South Pineapple Avenue, Sarasota, Florida 34236. The documents were personally delivered by Raymond K. Feliciano to Kristin Bown who identified herself as a person authorized to accept service.

29. Simultaneously with service, the process server tendered a check in the amount of $52.20, consisting of $40.00 for one day's attendance pursuant to 28 U.S.C. § 1821(b) and $10.20 for estimated roundtrip mileage pursuant to 28 U.S.C. § 1821(c).

30. A true and correct copy of the proof of service, including the process server's affidavit, is attached hereto as Exhibit G.

## HEARING LOGISTICS

31. The Panel Chairperson has confirmed that he will be physically present in Sarasota, Florida on November 6, 2026 to conduct the hearing and receive the subpoenaed documents and testimony.

## CONFERRAL

32. Prior to filing this Petition, counsel for LPL conferred with Jarrod Malone, Esq., counsel for Shumaker, on behalf of both LPL and Advisors, in a good-faith effort to resolve the issues raised herein. Specifically, on August 24, 2026, counsel for LPL sent counsel an email requesting confirmation of Shumaker's compliance with the Subpoena. Shumaker did not respond. The Petition is thus opposed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 18, 2026.

______________________________

Alexander H. Park

## EXHIBIT LIST

Exhibit A — Panel's May 1, 2026 Order and Original Subpoena

Exhibit B — Panel's May 29, 2026 Order

Exhibit C — Panel's July 22, 2026 Order and Operative Subpoena

Exhibit D — Shumaker's August 7, 2026 Objections

Exhibit E — Panel's August 24, 2026 Order

Exhibit F — Petitioners' August 24, 2026 Correspondence to Shumaker

Exhibit G — Proof of Service dated September 18, 2026

# Exhibit A

FINRA

# ORDER

**Submitted By:** Richard Mahrle (On behalf of the arbitration panel)
**Submitted Date:** 04/29/2026 05:04:37 PM ET

**Case ID & Parties:**
***FINRA Dispute Resolution Services***
ORDER

**Case Number:** 25-00296

**In the Matter of the Arbitration Between**

| **Claimant(s)** | **VS** | **Respondent(s)** |
|---|---|---|
| Ameriprise Financial Services, LLC | | LPL Financial LLC |
| | | Jared B Roskelley |
| | | Kyle L Robertson |
| | | Matthew J Tinyo |

## PREHEARING CONFERENCE

1. Was a prehearing conference held in the above captioned matter?
- ○ Yes
- ● **No**

## ISSUES ADDRESSED

2. Issues addressed: (i.e., name of motion or request, by which party)
- ● **The following submissions have been addressed:**

***Respondents' Motion for an Order for Non-Party to Produce Documents and to Appear for Testimony***

## ORDER DECIDED BY

3. Decided by:
- ○ Chairperson
- ● **Panel**

## RULINGS

4. Rulings:
- ● **After considering the parties' submissions (and oral arguments, if prehearing conference held), the Panel/Chairperson rules as follows:**

***The Motion is granted in part and a subpoena will be issued after eliminating requests 15-19 from the proposed subpoena.***

5. Order compliance date:

- ○ The parties should comply with this order by ______
- ● **Not applicable**

**ASSESSMENT OF FEES**

**NOTE: If no prehearing conference was held or the motion is not discovery related, no fee will be incurred by the parties, even if a fee is assessed below.**

6. Cost of prehearing conference or discovery-related motion:

- ● **If the parties settle this matter with no further hearings, the forum fees for this prehearing conference (or discovery-related motion decided without a prehearing conference) are assessed as follows:**

  ***50*% to Claimant(s), jointly and severally**

  ***50*% to Respondent(s), jointly and severally**

  **______% assessed to ______**

  **______% assessed to ______**

  **______% assessed to ______**

  **______% assessed to ______**
- ○ Not applicable

**ATTACHMENTS**

| Attachment Type | File Name | Description |
|---|---|---|
| Subpoena | Subpoena Duces Tecum to Non-Party Shumaker, Loop, & Kendrick LLP.pdf | Subpoena |

**Subpoena Duces Tecum to Non-Party Shumaker, Loop, & Kendrick LLP.pdf( 4/29/2026 5:41:41 PM)**

**FINRA OFFICE OF DISPUTE RESOLUTION**

| | |
|---|---|
| AMERIPRISE FINANCIAL SERVICES, LLC,<br><br>*Claimant*,<br><br>vs.<br><br>JARED BRYCE ROSKELLEY, KYLE LEE ROBERTSON, MATTHEW JOSEPH TINYO, and LPL FINANCIAL LLC,<br><br>*Respondents*. | FINRA Case No.: 25-00296 |

**SUBPOENA DUCES TECUM TO NON-PARTY SHUMAKER, LOOP & KENDRICK LLP**

To: Shumaker Loop & Kendrick LLP
c/o Jarrod Malone, Esq.
240 South Pineapple Avenue, 9th Floor
Sarasota, Florida 34236
(941) 366-6660

From: McGuireWoods LLP
Cheryl L. Haas
1075 Peachtree Street, N.E.
35th Floor
Atlanta, GA 30309-3900
(404) 443-5726

Weiss Brown
Alexander H. Park
6263 N. Scottsdale Rd.
Suite 340
Scottsdale, Arizona 85250
(480) 327-6650

**PLEASE TAKE NOTICE** that, pursuant to FINRA Rule 13512 and the Federal Arbitration Act, 9 U.S.C. § 7, you are hereby commanded by this FINRA Arbitration Panel sitting in Phoenix, Arizona to produce the documents and materials listed below in Schedule A within 30 days of receipt of this Subpoena.

Archer K Mitchell
Chair

April 29, 2026
Date

## SCHEDULE A

## DEFINITIONS

1. "Shumaker," "You" or "Your" shall mean Shumaker Loop & Kendrick LLP and its respective predecessors in interest, and its past and present employees, representative(s), agents, independent contractors, related or affiliated entities, and all others acting for or on its behalf.

2. "LPL" shall mean LPL Financial, LLC, and its respective predecessors in interest, and its past and present employees, representative(s), agents, independent contractors, related or affiliated entities, and all others acting for or on its behalf.

3. "Individual Advisors" shall mean any, all, or a subset of Respondents Jared Bryce Roskelley, Matthew Joseph Tinyo, and/or Kyle Lee Robertson.

4. "Raymond James" shall mean Raymond James Financial Services, Inc., and its respective predecessors in interest, and its past and present employees, representative(s), agents, independent contractors, related or affiliated entities, and all others acting for or on its behalf.

5. "Ameriprise" or "Claimant" shall mean Claimant Ameriprise Financial Services, LLC, and their affiliates, representatives, agents, and all others acting for and/or on their behalf.

6. "Client Information" refers to the personal information of a customer including, without limitation, contact information, social security number, tax identification number, account number(s), account information, routing number(s), date of birth, customer ID number(s), account value(s), securities value(s), funds available, money market balance, margin available, product class, plan id, and positions held.

7. "Documents" shall mean any and all writings, electronic or graphic material, or any copy thereof, however produced or reproduced, relating to any of the subjects inquired about in any request and includes, but is not limited to, the original, any draft and all non-identical copies of all communication, correspondence, papers, books, pamphlets, periodicals, photographs, objects, microfilm or microfiche, contracts, leases, audiotapes, videotapes, notes or sound recording or other memorialization's of oral communications, memoranda, records, reports, studies, written forecasts, projections, analyses, estimates, desk or other calendars, appointment books, diaries, data sheets, data processing cards, computer disks, computer tape or other data compilations from which information can be obtained or translated, computer printouts, confirmations, statements of account, checks, bank drafts, cashier or bank checks, mailgrams, telegrams, transcripts, work papers, charts, graphs, news clippings, press releases, newspaper accounts, and audiotape, videotape, or transcriptions of television or radio broadcasts. All attachments or exhibits to the documents which fall within this request shall also be produced.

8. "Communication(s)" means any and all inquiries, discussions, conferences, conversations, correspondence, negotiations, agreements, meetings, interviews, telephone conversations, letters, notes, telegrams, facsimiles, electronic mail (email), memoranda, documents, writings, or other forms of communications, including but not limited to both oral and written communications. "Communication" includes every manner of transmitting or receiving facts, information, opinions, or thoughts, whether oral, in writing, or otherwise, including, without

limitation, emails, text messages, instant messages or other electronic forms of correspondence. "Communication" also expressly includes any notes, memoranda, memorialization, or any other document reflecting, verifying, evidencing or relating to any communication or correspondence, whether by writing, electronic, audio, or video means.

9. "Relating to," "related to," "reflect," "reflecting," "regarding," "supporting," and "concerning" shall have the broadest meaning possible, including but not limited to pertaining to, regarding, referring to, containing, alluding to, in connection with, responding to, commenting upon, evidencing, discussing, showing, disclosing, explaining, describing, mentioning, analyzing, constituting, comprising, setting forth, summarizing, or characterizing either directly or indirectly, in whole or in part.

10. The term "identify" when used in connection with a person means to identify such person by name and last known address and telephone number.

11. The term "identify" when used in connection with a corporation, partnership or other entity means to identify such entity by name and last known business address and telephone number.

12. The term "identify" when used in connection with a document means to identify such document by title, date and summary of contents.

13. "Statement of Claim" means the Statement of Claim filed by Ameriprise on February 11, 2025, in FINRA Case No. 25-00296

14. "Lawsuit" means FINRA Case No. 25-00296, *Ameriprise Financial Services, LLC. v. Jared Bryce Roskelley, et al.*

15. The "Complaint" means *Ameriprise Financial Services, LLC v. Jared Bryce Roskelley, et al.*, Case No. 2:25-cv-00455-SPL, filed in the District of Arizona on February 11, 2025.

16. The term "person" means any natural person, the estate of any natural person, or any legal entity, including, but not limited to, a partnership, joint venture, firm, association, corporation, business, governmental entity or any other legal entity and an unincorporated association, and any officer, director, employee, agent or other person acting or purporting to act on its behalf.

17. The term "Protocol" refers to the Protocol for Broker Recruiting.

18. The term "address" means the post office box number, street number, street, city, state, or country (if other than the United States of America) and zip code.

19. The term "all" also means "any" and vice versa.

20. The term "Relevant Time Period" shall refer to the period from January 1, 2023 to the present.

## INSTRUCTIONS

21. The conjunctive "and" should be interpreted in the disjunctive to include the term "or" and vice versa.

22. The singular form of a word should be interpreted in the plural and vice versa.

23. You are required to produce documents and information in your possession, custody, or control, whether secured by you, your agent, your representative, your attorney, or any other person who made the documents and information known to you, or from whom you have the authority or ability to obtain those documents.

24. These document requests shall be deemed continuing in nature and supplemental responses thereto shall be required immediately upon receipt thereof, if you, directly or indirectly, obtain further or different documents or information from the time the answers are served until the time of the final arbitration hearing date.

25. A request for information may be responded to by reference to documents produced by you provided that you identify the Bates number containing responsive information with specificity.

26. If any documents responsive to these requests have been discarded, lost, destroyed or are otherwise unavailable, please identify such documents to the best of your ability by title, date and contents, state the date on which they were discarded, lost, destroyed or otherwise became unavailable and the reason therefore and identify the person by name, address and telephone number who last had possession of them.

27. Unless otherwise specifically indicated, the period of time encompassed by these requests shall be the Relevant Time Period.

28. Each of the following requests shall be answered separately and fully in writing, identifying the specific documents responsive to each request.

29. If, in answering these requests, you encounter any ambiguity in a question, instruction, or definition, set forth the matter deemed ambiguous, and the interpretation you used in answering the request.

30. If you assert privilege, work product immunity, or decline to provide an answer on the basis of some other objection, please provide, at the same time as your production, a privilege log which:

a. identifies and describe the document or communication in question;

b. describe the basis for the asserted privilege or objection;

c. identifies every person to whom the document was sent, or every person present when the communication was made; and

d. to the extent that they are not otherwise identified in the course of answering these document requests, identify all documents on which you relied in answering these requests.

31. If you object to any request, please specifically identify, pursuant to FINRA Rule 13508, any responsive documents or requested information that have been withheld pursuant to that objection.

32. Production of responsive data or information that exists in electronic digital or magnetic form is specifically requested. Such data or information shall include document identifiers. Please convert such data or information to images (whether Adobe or multi-page TIFF files). The data or information should be labeled both in the electronic file name of the file (for instance ABC00001.pdf) as well as being stamped on a page level with consecutive numbering.

33. For any emails that are being converted to image and produced, the extracted attachments are to follow the email directly.

34. You are under a duty to make a complete response based upon all information reasonably available to you and your attorney at the time of your response.

35. Please produce documents that are within your custody, possession, or control, or are within the custody, possession, or control of your agents, representatives, consultants, accountants, attorneys, or their agents, or which are otherwise available to you. In responding to these discovery requests, you are specifically instructed to review any storage and archive facilities and the personnel files, records, notes, correspondence, daily calendars, and telephone logs or records of all persons who have knowledge of the information inquired about in each request.

36. Responsive documents shall be produced as they have been kept in the usual course of business or shall be organized. If there are no documents responsive to a particular category, you shall state such in writing.

**REQUEST FOR DOCUMENTS**

1. All Documents and Communications relating to Shumaker's engagement to represent any of the Individual Advisors in connection with their departure from Raymond James and transition to Ameriprise, including engagement letters, fee arrangements, conflicts checks, and scope-of-representation documents.

2. All Documents and Communications reflecting Ameriprise's role, if any, in retaining, approving, paying for, or communicating with Shumaker regarding Your representation of the Individual Advisors in connection with their transition to Ameriprise.

3. All Documents and Communications between Shumaker and the Individual Advisors concerning the Protocol for Broker Recruiting, including advice, analysis, guidance, summaries, memoranda, or instructions regarding compliance with the Protocol.

4. All Documents and Communications reflecting advice or instruction Shumaker provided to the Individual Advisors concerning permissible conduct upon resignation, including but not limited to client communications, solicitation restrictions, and data retention.

5. All Documents and Communications reflecting Shumaker's analysis of the Individual Advisors' contractual obligations to Raymond James or Ameriprise in connection with their transition, including drafts, notes, or internal memoranda.

6. All Documents and Communications concerning the Individual Advisors' use, maintenance, or retention of client information in third-party databases (including but not limited to Redtail, Egnyte, or similar platforms).

7. All Documents and Communications reflecting advice or instruction provided to Shumaker regarding whether, how, and under what conditions the Individual Advisors could retain, access, use, or populate third-party databases in connection with their transition to Ameriprise.

8. All Documents and Communications exchanged between Shumaker and Ameriprise concerning the Individual Advisors' use of third-party databases or retention of client information, including any agreements, approvals, certifications, or restrictions.

9. All Documents and Communications relating to the negotiation, drafting, revision, or execution of any agreements between Ameriprise and the Individual Advisors concerning client information, data retention, or third-party databases, including drafts, redlines, comments, and internal communications.

10. All final, executed copies of any agreements between the Individual Advisors and Ameriprise concerning client information, data retention, or third-party databases, including any attachments, exhibits, side letters, or amendments.

11. All billing records, invoices, time entries, and fee statements relating to Shumaker's representation of the Individual Advisors, including any invoices submitted to Ameriprise for payment.

12. All Documents and Communications reflecting Ameriprise's consent to, or knowledge of, the Individual Advisors' retention or use of client information in third-party databases.

13. All Documents and Communications to, from, or concerning Michael S. Taaffe relating to any of the Individual Advisors, including but not limited to his role in their transition from Raymond James to Ameriprise, his designation as their attorney in any correspondence, and any subsequent involvement in Ameriprise's decision to assert claims against them.

14. All Documents and Communications relating to Shumaker's decision to represent Ameriprise in asserting claims against the Individual Advisors and LPL, including conflict analyses, waivers, or internal discussions concerning prior representations.

15. All Documents reflecting the identification, collection, review or return of files belonging to the Individual Advisors following Shumaker's withdrawal, including inventories, privilege logs, or explanations for withheld materials.

# Exhibit B

# ORDER

**Submitted By:** Richard Mahrle (On behalf of the arbitration panel)
**Submitted Date:** 05/29/2026 05:14:40 PM ET

**Case ID & Parties:**
***FINRA Dispute Resolution Services***
ORDER

**Case Number:** 25-00296

**In the Matter of the Arbitration Between**

| Claimant(s) | VS | Respondent(s) |
|---|---|---|
| Ameriprise Financial Services, LLC | | LPL Financial LLC |
| | | Jared B Roskelley |
| | | Kyle L Robertson |
| | | Matthew J Tinyo |

## PREHEARING CONFERENCE

1. Was a prehearing conference held in the above captioned matter?
- ○ Yes
- ● **No**

## ISSUES ADDRESSED

2. Issues addressed: (i.e., name of motion or request, by which party)
- ● **The following submissions have been addressed:**

***Non-party Shumaker filed an objection to the subpoena issued to it at the request of Respondents on May 15, 2026. Respondent submitted a response and Shumaker a reply. Shumaker asserts that this panel does not have the authority to issue a subpoena that essentially asks for pre-hearing discovery of documents and asks that the subpoena be quashed. Respondents have offered an amended subpoena, in part, that addresses some the concerns raised by Shumaker. Shumaker argues that a new subpoena cannot be issued without compliance with FIRNA Rule 13512.***

## ORDER DECIDED BY

3. Decided by:
- ○ Chairperson
- ● **Panel**

**RULINGS**

4. Rulings:

- ● **After considering the parties' submissions (and oral arguments, if prehearing conference held), the Panel/Chairperson rules as follows:**

***The subpoena issued to Shumaker is quashed. However, this panel does have the authority to issue subpoenas to non-parties. Furthermore, many of the documents requested in the subpoena, if they exist, appear to be relevant and material to the issues being raised in this arbitration. The panel makes no comment on privilege issues, or other objections raised by Shumaker. The concern here is the time, place and manner of the production. Shumaker is correct that the process used here by Respondents asking that the panel issue an amended subpoena is improper under FINRA Rule 13512, but Respondents may file an appropriate motion seeking a new subpoena that addresses the manner of production that would comply with the applicable rules and laws.***

5. Order compliance date:

- ○ The parties should comply with this order by ______
- ● **Not applicable**

**ASSESSMENT OF FEES**

**NOTE: If no prehearing conference was held or the motion is not discovery related, no fee will be incurred by the parties, even if a fee is assessed below.**

6. Cost of prehearing conference or discovery-related motion:

- ● **If the parties settle this matter with no further hearings, the forum fees for this prehearing conference (or discovery-related motion decided without a prehearing conference) are assessed as follows:**

  **______% to Claimant(s), jointly and severally**

  ***100*% to Respondent(s), jointly and severally**

  **______% assessed to ______**

  **______% assessed to ______**

  **______% assessed to ______**

  **______% assessed to ______**

- ○ Not applicable

**ATTACHMENTS**

There are no attached documents.

# Exhibit C

# ORDER

**Submitted By:** Richard Mahrle (On behalf of the arbitration panel)
**Submitted Date:** 07/20/2026 03:49:45 PM ET

**Case ID & Parties:**
***FINRA Dispute Resolution Services***
ORDER

**Case Number:** 25-00296

**In the Matter of the Arbitration Between**

| Claimant(s) | VS | Respondent(s) |
|---|---|---|
| Ameriprise Financial Services, LLC | | LPL Financial LLC |
| | | Jared B Roskelley |
| | | Kyle L Robertson |
| | | Matthew J Tinyo |

## PREHEARING CONFERENCE

1. Was a prehearing conference held in the above captioned matter?
- ○ Yes
- ● **No**

## ISSUES ADDRESSED

2. Issues addressed: (i.e., name of motion or request, by which party)
- ● **The following submissions have been addressed:**

***Respondents' Joint Motion for a Subpoena dated June 15, 2026 and the responses and objections that have been filed.***

## ORDER DECIDED BY

3. Decided by:
- ○ Chairperson
- ● **Panel**

## RULINGS

4. Rulings:
- ● **After considering the parties' submissions (and oral arguments, if prehearing conference held), the Panel/Chairperson rules as follows:**

***Repondents' Motion seeking the issuance of a subpoena is granted. The subpoena as signed by the panel is attached. The parties should note that the date set for the hearing in Florida was set based on the availability of the chairman to attend the hearing provided for in the subpoena and is also intended to allow the parties time to seek court intervention if pursued. The panel will work with the parties and the law firm subject to the subpoena to modify the date of the hearing if necessary.***

5. Order compliance date:

- ○ The parties should comply with this order by ______
- ● **Not applicable**

**ASSESSMENT OF FEES**

**NOTE: If no prehearing conference was held or the motion is not discovery related, no fee will be incurred by the parties, even if a fee is assessed below.**

6. Cost of prehearing conference or discovery-related motion:

- ○ If the parties settle this matter with no further hearings, the forum fees for this prehearing conference (or discovery-related motion decided without a prehearing conference) are assessed as follows:

  ______% to Claimant(s), jointly and severally
  ______% to Respondent(s), jointly and severally
  ______% assessed to ______
  ______% assessed to ______
  ______% assessed to ______
  ______% assessed to ______
- ● **Not applicable**

**ATTACHMENTS**

| Attachment Type | File Name | Description |
|---|---|---|
| Subpoena | Subpoena to Shumaker Loop & Kendrick.pdf | Subpoena |

## FINRA OFFICE OF DISPUTE RESOLUTION

| | |
|---|---|
| AMERIPRISE FINANCIAL SERVICES, LLC,<br><br>*Claimant,*<br><br>vs.<br><br>JARED BRYCE ROSKELLEY, KYLE LEE ROBERTSON, MATTHEW JOSEPH TINYO, and LPL FINANCIAL LLC,<br><br>*Respondents.* | FINRA Case No.: 25-00296 |

## ARBITRATION SUMMONS AND SUBPOENA TO TESTIFY AND PRESENT DOCUMENTARY EVIDENCE AT AN ARBITRATION HEARING

To: Shumaker Loop & Kendrick LLP
c/o Jarrod Malone, Esq.
240 South Pineapple Avenue, 9th Floor
Sarasota, Florida 34236
(941) 366-6660

From: McGuireWoods LLP
Cheryl L. Haas
1075 Peachtree Street, N.E.
35th Floor
Atlanta, GA 30309-3900
(404) 443-5726

Weiss Brown
Alexander H. Park
6263 N. Scottsdale Rd.
Suite 340
Scottsdale, Arizona 85250
(480) 327-6650

**PLEASE TAKE NOTICE** that, pursuant to FINRA Rule 13512 and the Federal Arbitration Act, 9 U.S.C. § 7, you are hereby summoned and subpoenaed by this FINRA Arbitration Panel to appear and testify as a witness at a hearing before the undersigned arbitrators to be held on November 6, 2026, in Sarasota Florida, and to bring with you to the hearing the documents identified in Schedule A annexed to this subpoena.[1] Should you assert that any documents identified in Schedule A are protected from disclosure by an assertion of privilege,

[1] Please contact Cheryl L. Haas at the number above a week before the scheduled hearing to receive the final address in Sarasota, Florida for the hearing.

you must bring to the hearing a privilege log with sufficient information to determine the basis of the assertion of privilege, as well as the purportedly privileged document(s) for *in camera* review by the FINRA Arbitration Panel should the Panel deem it necessary.

Chair — July 16, 2026
Date

Arbitrator — July 17, 2026
Date

Arbitrator — July 17, 2026
Date

# SCHEDULE A

## DEFINITIONS

1. "Shumaker," "You" or "Your" shall mean Shumaker Loop & Kendrick LLP and its respective predecessors in interest, and its past and present employees, representative(s), agents, independent contractors, related or affiliated entities, and all others acting for or on its behalf.

2. "LPL" shall mean LPL Financial, LLC, and its respective predecessors in interest, and its past and present employees, representative(s), agents, independent contractors, related or affiliated entities, and all others acting for or on its behalf.

3. "Individual Advisors" shall mean any, all, or a subset of Respondents Jared Bryce Roskelley, Matthew Joseph Tinyo, and/or Kyle Lee Robertson.

4. "Raymond James" shall mean Raymond James Financial Services, Inc., and its respective predecessors in interest, and its past and present employees, representative(s), agents, independent contractors, related or affiliated entities, and all others acting for or on its behalf.

5. "Ameriprise" or "Claimant" shall mean Claimant Ameriprise Financial Services, LLC, and their affiliates, representatives, agents, and all others acting for and/or on their behalf.

6. "Client Information" refers to the personal information of a customer including, without limitation, contact information, social security number, tax identification number, account number(s), account information, routing number(s), date of birth, customer ID number(s), account value(s), securities value(s), funds available, money market balance, margin available, product class, plan id, and positions held.

7. "Documents" shall mean any and all writings, electronic or graphic material, or any copy thereof, however produced or reproduced, relating to any of the subjects inquired about in any request and includes, but is not limited to, the original, any draft and all non-identical copies of all communication, correspondence, papers, books, pamphlets, periodicals, photographs, objects, microfilm or microfiche, contracts, leases, audiotapes, videotapes, notes or sound recording or other memorialization's of oral communications, memoranda, records, reports, studies, written forecasts, projections, analyses, estimates, desk or other calendars, appointment books, diaries, data sheets, data processing cards, computer disks, computer tape or other data compilations from which information can be obtained or translated, computer printouts, confirmations, statements of account, checks, bank drafts, cashier or bank checks, mailgrams, telegrams, transcripts, work papers, charts, graphs, news clippings, press releases, newspaper accounts, and audiotape, videotape, or transcriptions of television or radio broadcasts. All attachments or exhibits to the documents which fall within this request shall also be produced.

8. "Communication(s)" means any and all inquiries, discussions, conferences, conversations, correspondence, negotiations, agreements, meetings, interviews, telephone conversations, letters, notes, telegrams, facsimiles, electronic mail (email), memoranda, documents, writings, or other forms of communications, including but not limited to both oral and written communications. "Communication" includes every manner of transmitting or receiving facts, information, opinions, or thoughts, whether oral, in writing, or otherwise, including, without

limitation, emails, text messages, instant messages or other electronic forms of correspondence. "Communication" also expressly includes any notes, memoranda, memorialization, or any other document reflecting, verifying, evidencing or relating to any communication or correspondence, whether by writing, electronic, audio, or video means.

9. "Relating to," "related to," "reflect," "reflecting," "regarding," "supporting," and "concerning" shall have the broadest meaning possible, including but not limited to pertaining to, regarding, referring to, containing, alluding to, in connection with, responding to, commenting upon, evidencing, discussing, showing, disclosing, explaining, describing, mentioning, analyzing, constituting, comprising, setting forth, summarizing, or characterizing either directly or indirectly, in whole or in part.

10. The term "identify" when used in connection with a person means to identify such person by name and last known address and telephone number.

11. The term "identify" when used in connection with a corporation, partnership or other entity means to identify such entity by name and last known business address and telephone number.

12. The term "identify" when used in connection with a document means to identify such document by title, date and summary of contents.

13. "Statement of Claim" means the Statement of Claim filed by Ameriprise on February 11, 2025, in FINRA Case No. 25-00296

14. "Lawsuit" means FINRA Case No. 25-00296, *Ameriprise Financial Services, LLC. v. Jared Bryce Roskelley, et al.*

15. The "Complaint" means *Ameriprise Financial Services, LLC v. Jared Bryce Roskelley, et al.*, Case No. 2:25-cv-00455-SPL, filed in the District of Arizona on February 11, 2025.

16. The term "person" means any natural person, the estate of any natural person, or any legal entity, including, but not limited to, a partnership, joint venture, firm, association, corporation, business, governmental entity or any other legal entity and an unincorporated association, and any officer, director, employee, agent or other person acting or purporting to act on its behalf.

17. The term "Protocol" refers to the Protocol for Broker Recruiting.

18. The term "address" means the post office box number, street number, street, city, state, or country (if other than the United States of America) and zip code.

19. The term "all" also means "any" and vice versa.

20. The term "Relevant Time Period" shall refer to the period from January 1, 2023 to the present.

## INSTRUCTIONS

21. The conjunctive "and" should be interpreted in the disjunctive to include the term "or" and vice versa.

22. The singular form of a word should be interpreted in the plural and vice versa.

23. You are required to produce documents and information in your possession, custody, or control, whether secured by you, your agent, your representative, your attorney, or any other person who made the documents and information known to you, or from whom you have the authority or ability to obtain those documents.

24. These document requests shall be deemed continuing in nature and supplemental responses thereto shall be required immediately upon receipt thereof, if you, directly or indirectly, obtain further or different documents or information from the time the answers are served until the time of the final arbitration hearing date.

25. If any documents responsive to these requests have been discarded, lost, destroyed or are otherwise unavailable, please identify such documents to the best of your ability by title, date and contents, state the date on which they were discarded, lost, destroyed or otherwise became unavailable and the reason therefore and identify the person by name, address and telephone number who last had possession of them.

26. Unless otherwise specifically indicated, the period of time encompassed by these requests shall be the Relevant Time Period.

27. Each of the following requests shall be answered separately and fully in writing, identifying the specific documents responsive to each request.

28. If, in answering these requests, you encounter any ambiguity in a question, instruction, or definition, set forth the matter deemed ambiguous, and the interpretation you used in answering the request.

29. If you assert privilege, work product immunity, or decline to provide a document on the basis of some other objection, please provide, at the same time as your production, a privilege log which:

a. identifies and describe the document or communication in question;

b. describe the basis for the asserted privilege or objection;

c. identifies every person to whom the document was sent, or every person present when the communication was made; and

d. to the extent that they are not otherwise identified in the course of answering these document requests, identify all documents on which you relied in answering these requests.

30. If you assert privilege, work product immunity, or decline to provide a document on the basis of some other objection, please bring the document(s) to the scheduled hearing for potential *in camera* review by the FINRA Arbitration Panel.

31. If you object to any request, please specifically identify, pursuant to FINRA Rule 13508, any responsive documents or requested information that have been withheld pursuant to that objection.

32. Production of responsive data or information that exists in electronic digital or magnetic form is specifically requested. Such data or information shall include document identifiers. Please convert such data or information to images (whether Adobe or multi-page TIFF files). The data or information should be labeled both in the electronic file name of the file (for instance ABC00001.pdf) as well as being stamped on a page level with consecutive numbering.

33. For any emails that are being converted to image and produced, the extracted attachments are to follow the email directly.

34. You are under a duty to make a complete response based upon all information reasonably available to you and your attorney at the time of your response.

35. Please produce documents that are within your custody, possession, or control, or are within the custody, possession, or control of your agents, representatives, consultants, accountants, attorneys, or their agents, or which are otherwise available to you. In responding to these discovery requests, you are specifically instructed to review any storage and archive facilities and the personnel files, records, notes, correspondence, daily calendars, and telephone logs or records of all persons who have knowledge of the information inquired about in each request.

36. Responsive documents shall be produced as they have been kept in the usual course of business or shall be organized. If there are no documents responsive to a particular category, you shall state such in writing.

## REQUEST FOR DOCUMENTS

1. All Documents and Communications relating to Shumaker’s engagement to represent any of the Individual Advisors in connection with their departure from Raymond James and transition to Ameriprise, including engagement letters, fee arrangements, conflicts checks, and scope-of-representation documents.

2. All Documents and Communications reflecting Ameriprise’s role, if any, in retaining, approving, paying for, or communicating with Shumaker regarding Your representation of the Individual Advisors in connection with their transition to Ameriprise.

3. All Documents and Communications between Shumaker and the Individual Advisors concerning the Protocol for Broker Recruiting, including advice, analysis, guidance, summaries, memoranda, or instructions regarding compliance with the Protocol.

4. All Documents and Communications reflecting advice or instruction Shumaker provided to the Individual Advisors concerning permissible conduct upon resignation, including but not limited to client communications, solicitation restrictions, and data retention.

5. All Documents and Communications reflecting Shumaker's analysis of the Individual Advisors' contractual obligations to Raymond James or Ameriprise in connection with their transition, including drafts, notes, or internal memoranda.

6. All Documents and Communications concerning the Individual Advisors' use, maintenance, or retention of client information in third-party databases (including but not limited to Redtail, Egnyte, or similar platforms).

7. All Documents and Communications reflecting advice or instruction provided to Shumaker regarding whether, how, and under what conditions the Individual Advisors could retain, access, use, or populate third-party databases in connection with their transition to Ameriprise.

8. All Documents and Communications exchanged between Shumaker and Ameriprise concerning the Individual Advisors' use of third-party databases or retention of client information, including any agreements, approvals, certifications, or restrictions.

9. All Documents and Communications relating to the negotiation, drafting, revision, or execution of any agreements between Ameriprise and the Individual Advisors concerning client information, data retention, or third-party databases, including drafts, redlines, comments, and internal communications.

10. All final, executed copies of any agreements between the Individual Advisors and Ameriprise concerning client information, data retention, or third-party databases, including any attachments, exhibits, side letters, or amendments.

11. All billing records, invoices, time entries, and fee statements relating to Shumaker's representation of the Individual Advisors, including any invoices submitted to Ameriprise for payment.

12. All Documents and Communications reflecting Ameriprise's consent to, or knowledge of, the Individual Advisors' retention or use of client information in third-party databases.

13. All Documents and Communications to, from, or concerning Michael S. Taaffe relating to any of the Individual Advisors, including but not limited to his role in their transition from Raymond James to Ameriprise, his designation as their attorney in any correspondence, and any subsequent involvement in Ameriprise's decision to assert claims against them.

14. All Documents and Communications relating to Shumaker's decision to represent Ameriprise in asserting claims against the Individual Advisors and LPL, including conflict analyses, waivers, or internal discussions concerning prior representations.

15. All Documents reflecting the identification, collection, review or return of files belonging to the Individual Advisors following Shumaker's withdrawal, including inventories, privilege logs, or explanations for withheld materials.

# Exhibit D

**BEFORE THE ARBITRATION BOARD OF THE
FINANCIAL INDUSTRY REGULATORY AUTHORITY**

| | |
|---|---|
| **In the Matter of the Arbitration Between**<br><br>**AMERIPRISE FINANCIAL SERVICES, LLC,**<br><br>**Claimant,**<br><br>**-vs-**<br><br>**JARED BRYCE ROSKELLEY, KYLE LEE ROBERTSON, MATTHEW JOSEPH TINYO, and LPL FINANCIAL, LLC,**<br><br>**Respondents.** | **FINRA NO. 25-00296** |

**<u>NON-PARTY SHUMAKER, LOOP & KENDRICK, LLP'S WRITTEN OBJECTIONS TO THE SUBPOENA DUCES TECUM</u>**

Non-party and non-FINRA Member Shumaker, Loop & Kendrick, LLP ("Shumaker") hereby submits these Written Objections to the Subpoena Duces Tecum dated July 23, 2026 (the "Subpoena"), issued by the Panel in the above-captioned arbitration pursuant to FINRA Rule 13512 and 9 U.S.C. § 7.

## <u>INTRODUCTION</u>

The Subpoena commands Shumaker, a law firm of over 300 attorneys and not a person, to appear and testify at a discovery hearing on November 6, 2026, in Sarasota, Florida, and to bring fifteen (15) categories of documents. Shumaker is a non-party to this arbitration and has no stake in its outcome.

As a threshold matter, the Subpoena as issued by FINRA is not enforceable against Shumaker, and no unilateral action by Respondents can cure that defect. Shumaker is neither a party nor a FINRA Member. The arbitration is occurring in Pheonix AZ, which is where the

arbitrators are "sitting." Holding a discovery hearing with one arbitrator in Sarasota does not cure the fact that the only District Court entitled to enforce such subpoena is the one that covers Phoenix AZ, and such Court has no jurisdiction over Shumaker.

Even if the Subpoena were valid and enforceable, the scope of permissible discovery from a non-party in arbitration remains limited by the Federal Arbitration Act, 9 U.S.C. § 7, which authorizes an arbitrator to summon persons to bring documents only when such documents "may be deemed **material** as evidence in the case," which is a much higher standard than ordinary discovery. The FAA "does not vest arbitrators with the full range of discovery powers that courts possess." *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 708 (9th Cir. 2017). The subpoena asks for clearly privileged information without providing any sort of waiver from Mr. Roskelley and the information sought is not relevant to any essential claim in the case.

Shumaker further objects to the Subpoena on the grounds set forth below, including attorney-client privilege, the work product doctrine, overbreadth, lack of proportionality, undue burden on a non-party, and undue influence. These objections are made in good faith and without waiver of any applicable right or privilege. Shumaker requests a hearing on this objection.

## GENERAL OBJECTIONS

Shumaker asserts the following General Objections, which are incorporated by reference into each Specific Objection below as though fully set forth therein.

### A. The Subpoena Cannot Be Enforced Against Shumaker

Under Eleventh Circuit case law, **which covers Florida,** a motion to enforce a subpoena issued under the FAA may be brought only in the district in which the arbitrators are "sitting"—that is, not where the subpoena requires compliance, but rather where the arbitration is being administered, which in this case is Phoenix, Arizona. Thus, even though the Panel has set a hearing

in Sarasota, Respondents' only mechanism for enforcing compliance with the Subpoena is through the United States District Court for the District of Arizona, which lacks jurisdiction over Shumaker.

The Eleventh Circuit has concluded that "the plain meaning of 9 U.S.C. § 7 requires that a motion to compel must be filed in the district in which the arbitrators are sitting." *Managed Care Advisory Grp. v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1158 (11th Cir. 2019) (emphasis added). The 11th Circuit and Courts across the country have concluded "that the arbitrator 'is sitting' where the underlying arbitration **is being administered – not the place of production**." *Depuy Synthes Sales, Inc. v. Smith + Nephew, Inc.*, No. 1:21-mc-11, 2022 WL 79812, at *2 (S.D. Oh. Jan. 7, 2022) (collecting cases) (emphasis added); *see Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 95 (2d Cir. 2006); *Day v. Orrick, Herrington & Sutcliffe LLP*, No. 21-mc-80181, 2021 WL 4069753, at *1 (N.D. Cal. Sept. 7, 2021) (*rev'd and remanded on other grounds*, 42 F.4th 1131 (9th Cir. 2022)).

The court in *Campaign Registry, Inc. v. Tarone*, No. 24 CIV. 2314, 2024 WL 3105524, at *2 (S.D.N.Y. June 24, 2024) also addressed this very problem in similar circumstances. The court agreed with the defendants' assertion that the arbitration panel "is sitting" in Delaware, since that is where the arbitration is to be administered, and that therefore only the United States District Court for the District of Delaware could enforce the arbitral subpoenas against them. *See id.* at 2-3. The *Campaign Registry* Court also found that "the fact that a subpoena can be served anywhere in the United States does not mean that the arbitrators are 'sitting' anywhere but at the situs of the arbitration, which in this case is Delaware." *See id.* at 3. The court was also clear that the plain text of Section 7 specifies that 'upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators ....'" and further posited that "[i]f Congress

wanted to allow any court in the nation to enforce an arbitral subpoena, it needed to get rid of that statutory language. Perhaps it should have. But it did not do so. I, a mere United States District Judge, cannot do what Congress either declined or failed to do." *See id.* at 4; *see also Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1157–58 (11th Cir. 2019) ("we conclude that the plain meaning of 9 U.S.C. § 7 requires that a motion to compel must be filed in the district in which the arbitrators are sitting.").

In sum, the Subpoena as issued by FINRA is not enforceable against Shumaker, a non-party in Sarasota. Moreover, even if any of the Respondents sought to compel compliance with the Subpoena, the law would require them to do so through the United States District Court for the District of Arizona, which likewise lacks jurisdiction over Shumaker in this context. Therefore, the Subpoena is unenforceable.

Further, the Subpoena is independently deficient because it is directed to Shumaker as a law firm rather than to a natural person. In *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 407 (3d Cir. 2004), then-Judge Alito found that Section 7 "speaks unambiguously to the issue": "[t]he power to require a non-party 'to bring' items 'with him' clearly applies only to situations in which the non-party accompanies the items to the arbitration proceeding, not to situations in which the items are simply sent or brought by a courier" (quoting 9 U.S.C. § 7). *Accord CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 707 (9th Cir. 2017). Because Section 7 contemplates a natural person appearing "with him" and bringing documents, a non party FINRA subpoena directed to a firm rather than to an individual representative is improper and cannot be enforced when it is for discovery production and not at a merits hearing.

### B. The Scheduled November 6 Proceeding Is a Discovery Hearing Unenforceable Under the FAA and Ninth and Eleventh Circuit Precedent

#### 1. *The Governing Legal Framework: Section 7 Prohibits Pre-Hearing Discovery from Non-Parties*

Circuit courts around the country have all held that the plain language of 9 U.S.C. § 7 is "unambiguous in requiring witnesses to appear before an arbitrator and bring any documents with them, thus prohibiting pre-hearing discovery from non-parties." *Managed Care Advisory Group, LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1159–60 (11th Cir. 2019). The Ninth Circuit has separately held that "section 7 of the FAA does not grant arbitrators the power to order third parties to produce documents prior to an arbitration hearing." *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 708 (9th Cir. 2017).

The critical distinction is between a "hearing"—meaning a merits hearing or evidentiary proceeding before the arbitral tribunal at which evidence is received for the purpose of deciding the case—and a pre-hearing discovery proceeding whose sole purpose is to obtain documents or testimony in advance of the merits determination. FINRA Rule 13100(o) is directly on point here: “The term "hearing" means the hearing **on the merits of an arbitration**.” (emphasis added).[1]

Moreover, the Eleventh Circuit made this distinction explicit, holding that "the plain meaning of Section 7" requires "(1) requiring summonsed non-parties to appear in the physical presence of the arbitrator as opposed to a video conference or teleconference; and (2) prohibiting pre-hearing discovery." *Managed Care*, 939 F.3d at 1161. The Third Circuit similarly observed that under Section 7's prohibition, parties are "forced to appear at a proceeding during which the documents are produced," which imposes a structural constraint that "induce[s] the arbitrator to

[1] There is no such thing as a “discovery hearing—there are only pre-hearing conferences at which discovery issues are addressed.

weigh whether the production of the documents is necessary." *Hay Group, Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 409, 414 (3d Cir. 2004).

Because the Subpoena at issue purports to create a pre-hearing discovery proceeding at which only one arbitrator would be present, it is unenforceable under the plain language of Section 7.

*2. The November 6 Proceeding Is a Pre-Hearing Conference, Not a Merits Hearing*

The proceeding scheduled for November 6, 2026 in Sarasota, Florida is, by every objective measure, a pre-hearing discovery proceeding—not a merits hearing. The record is unambiguous on this point. Respondents themselves denominated the proceeding a "discovery hearing" throughout their motion practice. In their June 15, 2026 renewed motion, Respondents stated that the subpoena "provides for production at a discovery hearing before the final hearing" and specifically argued that "FINRA panels therefore routinely hold discovery hearings before the final hearing to receive documents and testimony from third parties." *See* Renewed Motion, at 5-6. Respondents further described the proceeding's sole purpose as obtaining documents from a non-party, explaining that "the parties and Panel cannot wait until the final evidentiary hearing to obtain documents from Shumaker" because that "would leave Respondents no meaningful time to evaluate the documents, develop their defenses, or enforce compliance." *Id.* at 5. This language confirms that the November 6 proceeding is designed to obtain discovery in advance of the merits hearing—precisely the type of pre-hearing discovery that *Managed Care* and *CVS Health* prohibit under Section 7 of the FAA.

Ameriprise's own characterization reinforces this conclusion. In its June 25, 2026 opposition, Ameriprise objected to "convening a special hearing in Sarasota, Florida for the sole purpose of obtaining documents from a non-party law firm." *See* Reply, at 1. Ameriprise described

the proceeding not as a hearing on the merits, but as an extraordinary "special process involving the Panel's time and the effort to convene this special hearing in Florida." *Id.* The Panel's own orders confirm this characterization. The July 20, 2026 order granting the renewed motion described it as a proceeding held in advance of the merits hearing, with the date set "based on the availability of the chairman to attend" and "intended to allow the parties time to seek court intervention if pursued."

*3. The Proceeding Involves Only a Single Arbitrator, Not the Full Panel*

The distinction between the November 6 proceeding and a merits hearing is further underscored by the fact that only the Chairman—a single arbitrator—is scheduled to attend. The Panel's July 20, 2026 order set the date "based on the availability of the chairman to attend the hearing provided for in the subpoena." In FINRA arbitrations involving three-member panels, merits hearings are conducted before all three arbitrators.

The fact that this proceeding is being conducted by the Chairman alone—with the other two panelists not in attendance—is dispositive evidence that this is not a merits hearing but rather a discovery or administrative proceeding. It cannot be a "hearing" within the meaning of 9 U.S.C. § 7 if it is not the proceeding at which the merits of the dispute will be decided.

*4. No Merits Hearing Can Occur in Sarasota, Florida*

The merits hearing location for this arbitration was set at the outset of the case as Phoenix, Arizona, pursuant to FINRA Rule 13213, which provides that "the Director will decide which of FINRA's hearing locations will be the hearing location for the arbitration" and that in cases involving associated persons, the Director will "generally select the hearing location closest to where the associated person was employed at the time of the events giving rise to the dispute." The Individual Advisors were employed in Arizona. The merits hearing location is Phoenix. There has

been no motion practice to change the hearing location under Rule 13213(a)(4), and no party has sought to relocate the merits hearing to Sarasota, Florida.

Sarasota, Florida is not a FINRA hearing location for this case. No merits hearing will occur there. The November 6 proceeding in Sarasota exists for one purpose and one purpose only: to obtain documents from a non-party in advance of the merits hearing. That is the textbook definition of pre-hearing discovery—and it is precisely what circuit courts around the country have held that Section 7 does not authorize.

Respondents have attempted to characterize the proceeding as a "hearing" to circumvent these limitations. Their renewed motion argued that because the subpoena requires Shumaker to "appear and testify as a witness" and to "bring with" it documents, the proceeding satisfies Section 7's requirements. But a label does not transform a discovery proceeding into a merits hearing. The Eleventh Circuit specifically rejected this formalism in *Managed Care*, holding that "providing the necessary documents to the arbitrator and attorneys prior to the hearing constitutes pre-hearing discovery that is not authorized by the FAA," regardless of whether the proceeding is styled as a "hearing." *Managed Care*, 939 F.3d at 1161. The question is not what the proceeding is called, but what it is: if its purpose is to obtain documents and testimony for use at a later merits hearing, it is pre-hearing discovery.

*5. The Subpoena Is Unenforceable Under the FAA*

For these reasons, the July 23, 2026 subpoena is unenforceable under 9 U.S.C. § 7 as applied in both the Ninth and Eleventh Circuits. The proceeding to which it is directed—a specially convened discovery hearing before a single arbitrator in a location that is not the merits hearing location—is not a "hearing" within the meaning of Section 7. It is pre-hearing discovery from a non-party, which the FAA "implicitly withholds the power" to compel. *Managed Care*, 939 F.3d

at 1159. Shumaker is located in Sarasota, Florida, within the Eleventh Circuit, and *Managed Care* is controlling authority in that circuit. The arbitration sits in Phoenix, Arizona, within the Ninth Circuit, and *CVS Health* is controlling authority there. Under neither circuit's law can a federal court enforce this subpoena against a non-party for what is, in substance and effect, pre-hearing discovery.

Should Respondents petition any court to enforce the subpoena, Shumaker will oppose enforcement on the ground that the proceeding is a discovery hearing—not a merits hearing—and that enforcement would contravene the binding precedent of both the Eleventh Circuit (*Managed Care*) and the Ninth Circuit (*CVS Health*). The Panel's own order contemplated this possibility by setting the hearing date to "allow the parties time to seek court intervention if pursued." Shumaker reserves all rights to seek such relief.

### C. The November 6 Proceeding Is Further Improper Due to Undue Burden and Undue Influence

Even if the November 6 proceeding could otherwise be treated as an authorized hearing, it remains independently improper because it imposes an undue burden on Shumaker, a non-party with no stake in the outcome of this arbitration, and because it is tainted by an appearance of undue influence over the arbitrator presiding over it. Under FINRA Rule 13512(g), the party seeking documents pursuant to a subpoena is required to pay the reasonable costs of the appearance or production. See also Fed. R. Civ. P. 45(d)(1) (requiring courts to protect non-parties from “significant expense resulting from compliance”).

Shumaker should not have to bear the cost of defending against a subpoena it never sought, and that burden is compounded here by Respondent LPL Financial LLC’s apparent direct payment of the presiding arbitrator’s travel expenses to attend the Sarasota hearing. Even framed as

reimbursement for a hearing LPL itself requested, that payment creates a direct financial flow from a party to the arbitrator that bypasses FINRA's neutral compensation channel.2

This payment creates, at minimum, a perception of gratitude or obligation on the part of the arbitrator toward the paying party, a concern that is especially acute here because the paying party, LPL, is the very party that advocated for the hearing requiring the travel. Respondents filed the renewed motion for a subpoena compelling Shumaker to appear in Sarasota, and in its July 6, 2026 reply brief, LPL's counsel characterized Ameriprise and Shumaker's position as "creating a burden in the hope that the Panel will find travel to Sarasota to be onerous."

If LPL then pays the airfare, hotel, and incidental expenses for that trip, the message is unmistakable: LPL is removing the very obstacle it identified so that the arbitrator will carry out the hearing LPL requested. Does LPL pay for upgraded legroom or a first-class ticket? Does LPL pay for a comfort Uber as opposed to an ordinary Uber? Does LPL pay for the Ocean view side of the hotel as an upgrade or provide a stipend for food? The arbitrator's willingness to travel—and to preside over the privilege review discussed below—becomes functionally contingent on LPL's financial support. That contingency creates the type of direct financial connection between a party and an arbitrator that federal courts have long treated as the hallmark of evident partiality warranting vacatur. *See In re Sussex*, 781 F.3d 1065, 1074 (9th Cir. 2015) ("we have held there was 'evident partiality' in cases that involved direct financial connections between a party and an arbitrator or its law firm, or a concrete possibility of such connections.").

Because the hearing is a direct consequence of LPL's advocacy and payment, that payment would taint the very privilege review the hearing is meant to conduct, and Shumaker's position as a non-party heightens this concern. Unlike the parties—who voluntarily submitted to FINRA

[2] And in the event Shumaker is ever required to comply with this Subpoena to any extent, it hereby makes a demand for Respondents to account for all costs and fees associated with same.

arbitration and who maintain contractual and regulatory relationships with FINRA—Shumaker has no stake in the outcome and no ongoing relationship with the arbitration forum. Non-parties are entitled to heightened protections under Federal Rule of Civil Procedure 45(d)(1)(B)(ii), which requires courts, and by extension arbitrators applying the federal procedural framework, to protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Shumaker should not be placed in the position of having its privilege assertions—discussed in detail below—adjudicated by an arbitrator who is financially beholden to the party seeking to defeat those assertions. For this reason, and for the reasons set forth above regarding the improper character of the November 6 proceeding, that proceeding should not go forward.

**D. Attorney-Client Privilege**

Shumaker also objects to the Subpoena to the extent it seeks documents and communications protected by the attorney-client privilege. Shumaker maintained attorney-client relationships with two distinct clients at different times relevant to this proceeding:

i. The Individual Advisors (Jared Bryce Roskelley, Kyle Lee Robertson, and Matthew Joseph Tinyo)—approximately August through October 2023, in connection with their departure from Raymond James Financial Advisors, LLC and transition to Ameriprise; and

ii. Ameriprise—commencing (in relation to this action) in or about February 2025, in connection with the filing of the Statement of Claim in this arbitration against the Individual Advisors and LPL.

As to the Individual Advisors' representation, the attorney-client privilege belongs to the Individual Advisors as the former clients. The Individual Advisors have made no waiver of this

privilege. As to Ameriprise's representation, Shumaker asserts the attorney-client privilege on behalf of its current client Ameriprise for all confidential communications made in the course of that representation. Ameriprise likewise has not authorized waiver of this privilege.

**E. Work Product Doctrine**

Shumaker objects to the Subpoena to the extent it seeks documents reflecting the mental impressions, conclusions, opinions, or legal theories of Shumaker attorneys developed in anticipation of litigation or in the course of providing legal services. *See In re EchoStar Communications Corp.*, 448 F.3d 1294, 1303 (Fed. Cir. 2006) (holding that the work product doctrine "protect[s] against the disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative."). Internal legal analyses, strategy memoranda, draft documents with attorney annotations, research memoranda, and similar materials constitute attorney work product and are protected from disclosure regardless of the identity of the client on whose behalf the work was performed. This protection extends to both "opinion" work product, which reflects an attorney's mental processes, and "fact" work product, which is prepared in anticipation of litigation, with opinion work product receiving near-absolute protection.

Again, neither the Individual Respondents nor Ameriprise have waived this privilege.

**F. The Panel Lacks Authority to Make Binding Privilege Determinations Over a Non-Party Under Florida Law**

*1. Florida Privilege Law Governs the Disputed Communications*

The documents and communications at issue in this subpoena are in Florida. Under well-established choice-of-law principles, the law of the state with the "most significant relationship" to the documents governs the existence and scope of evidentiary privileges. *See Nix v. ESPN, Inc.*, 772 F. App'x 807, 809 (11th Cir. 2019).

2. *FINRA Arbitrators Are Not Competent to Adjudicate Florida Statutory Privilege*

FINRA arbitrators are not bound by any state's rules of evidence, are not trained in the application of state statutory privilege and are not subject to appellate review of their evidentiary rulings. Further, an arbitrator attempting to do so would exceed the scope of authority granted to FINRA by the SEC.

The FINRA Code of Arbitration Procedure does not incorporate any state's evidence code, and FINRA's Arbitrator's Guide acknowledges that arbitrators have "great authority and wide latitude to decide matters as they see fit." While such latitude may be appropriate when deciding disputes between parties who have voluntarily and contractually submitted to arbitration, it is wholly inappropriate when applied to adjudicate the statutory privilege rights of a non-party law firm that has not consented to arbitration and whose ethical obligations require it to protect client confidences.

McGuireWoods LLP, counsel for LPL, has itself published a brief article outlining these very risks. In a 2008 article entitled “What Privilege Law Does an Arbitrator Follow?,” McGuireWoods observed that because "the arbitrator [is] not bound by the particulars of federal law governing the attorney-client privilege,” “[c]ompanies considering arbitrations should bear in mind that they may have no recourse if the arbitrator ignores general attorney-client privilege principles.” Thomas E. Spahn, *What Privilege Law Does an Arbitrator Follow?*, MCGUIREWOODS PRIVILEGE POINTS (Apr. 2008), available at https://www.mcguirewoods.com/client-resources/privilege-ethics/privilege-points/2008/4/what-privilege-law-does-an-arbitrator-follow/.

Putting aside that this is ordinarily a consideration for parties who have voluntarily agreed to arbitrate, the point remains that such uncertainty should particularly never be forced upon a non-party that never contractually agreed to arbitrate. That uncertainty is precisely the problem here:

Shumaker cannot entrust its clients' privilege rights—and its own ethical obligations—to a tribunal that applies no fixed legal standard, follows no binding precedent on privilege, and offers no mechanism for appellate correction of erroneous privilege determinations.

The consequences of an erroneous privilege determination here are therefore without fixed legal recourse. If the Panel orders production of documents that are protected under Florida law, the disclosure cannot be undone. Once privileged communications are disclosed to third or adverse parties, the privilege is waived as to those communications—potentially in perpetuity, including in subsequent proceedings in any forum. A non-party law firm's ethical obligation to protect client confidences should not be adjudicated in a forum that lacks both the legal authority and the institutional competence to apply the governing privilege law correctly.

*3. Section 7 of the FAA Does Not Grant Arbitrators Binding Privilege Authority Over Non-Parties*

Section 7 of the FAA authorizes arbitrators to "summon in writing any person to attend before them … as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. Critically, the statute says nothing about granting arbitrators the power to make binding privilege determinations. The enforcement mechanism in Section 7 is judicial: if a person "refuse[s] or neglect[s] to obey said summons," the remedy is a "petition [to] the United States district court for the district in which such arbitrators, or a majority of them, are sitting" to "compel the attendance" of the person. *Id.* Federal Rule of Civil Procedure 45(d)(2)(A) similarly contemplates judicial, not arbitral, resolution of privilege disputes: a person withholding subpoenaed information under a claim of privilege need only describe the withheld material "in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim," and Rule

45(d)(2)(B)(i) then authorizes the serving party to “move the court for the district where compliance is required for an order compelling production.” This structure confirms that privilege objections are ultimately resolved by a Florida court, not by the arbitrator—here, the Florida court system, which would have jurisdiction over the Subpoena, is competent to apply the Florida privilege law that governs the communications at issue, and whose orders are subject to appellate review.

The Panel's own July 20, 2026 order recognized this limitation by noting that the hearing date was set "to allow the parties time to seek court intervention if pursued." Shumaker respectfully submits that this acknowledgment confirms that the Panel's privilege rulings will not be self-executing and that any compulsion to produce privileged documents over Shumaker's objection must ultimately be sought through a court—which alone possesses the authority to make a binding determination under Florida law.

While an arbitrator's *in camera* review may serve a useful screening function in a FINRA arbitration over parties who have consented to FINRA, any resulting privilege determination cannot be treated as final or binding on a non-party that has not submitted to the arbitrator's jurisdiction. Further, if the arbitrator as the trier of fact reviews documents that it should not review, it cannot “un-ring the bell,” thereby prejudicing the parties.

For the foregoing reasons, any privilege determinations made by the arbitrators over a non party are inappropriate and without authority, so forcing a privilege log to determine privilege or an in camera review are both unlawful and thus void the subpoena.

**G. Overbreadth and Lack of Proportionality**

In addition to the authorities cited above which limit the scope of discovery via arbitrator subpoena, it is critical to note that non-party subpoenas in arbitration require a **<u>heightened</u>**

**showing of materiality**. *See also* Fed. R. Civ. P. 26(b)(1) (proportionality factors); Fed. R. Civ. P. 45(d)(1) (protecting non-parties from undue burden). Further, FINRA Rule 13512(a) reflects the same principle, directing that "[t]o the fullest extent possible, parties should produce documents and make witnesses available to each other without the use of subpoenas." The law "forces the party seeking the non-party discovery—and the arbitrators authorizing it—to consider whether production is **truly necessary**." *Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 218 (2d Cir. 2008). None of the discovery sought here from a non-party is material, let alone "truly necessary." Respondents argue in their motion that whether Ameriprise and Shumaker had a relationship "bears directly on the issues posed in this case." However, the case centers around whether Respondents violated the Protocol, so invasive discovery of a non party law firm to determine is hardly essential to determining whether Respondents violated the Protocol.

**H. Objection to Continuing Supplementation Obligation (Instruction 24)**

Shumaker objects to Instruction 24 of the Subpoena, which provides that the document requests "shall be deemed continuing in nature" and purports to require supplemental responses through the conclusion of this arbitration. The FAA does not authorize open-ended, continuing obligations upon non-parties. Shumaker cannot be bound by any purported continuing supplementation obligation.

**I. Relevance**

As a general standing objection to the subpoena and the requests contained therein, none of this information or documentation is relevant to this case. It is critical that the Panel understand the backdrop and context of the greater relationship between Ameriprise and LPL. Ameriprise and LPL currently have—for the better part of the past three years—several cases against each other, with the same counsel involved. All of these cases center around misconduct by LPL and

individuals LPL recruited from Ameriprise. Now, in this case, LPL is attempting to obtain privileged and irrelevant information for the purpose of potentially using it not only in this case but also in the other cases against Ameriprise. This information cannot be considered relevant—documents and information regarding recruitment from a different firm with different privacy policies and different contracts with advisors have no bearing on this case.

**J. Preservation of Prior Objections**

Shumaker incorporates by reference the objections set forth in its May 15, 2026 Written Objection and its May 28, 2026 Reply Letter. Nothing herein shall be deemed a waiver of any objection previously raised or any right previously reserved.

**SPECIFIC OBJECTIONS TO DOCUMENT REQUESTS**

In addition to and without waiving the General Objections set forth above, which are incorporated by reference into each response below, Shumaker objects to each specific Document Request as follows:

**Request No. 1**

*All Documents and Communications relating to Shumaker's engagement to represent any of the Individual Advisors in connection with their departure from Raymond James and transition to Ameriprise, including engagement letters, fee arrangements, conflicts checks, and scope-of-representation documents.*

**Objection.** Shumaker objects to this Request as it seeks documents and information not relevant to any claim or defense such as internal conflicts checks and scope-of-representation analyses, which constitute attorney work product reflecting the Firm's internal legal processes and assessments. Shumaker further objects as this Request seeks documents protected by the attorney-client privilege.

**Request No. 2**

*All Documents and Communications reflecting Ameriprise's role, if any, in retaining, approving, paying for, or communicating with Shumaker regarding Your representation of the Individual Advisors in connection with their transition to Ameriprise.*

**Objection.** Shumaker objects to this Request as it seeks documents that are not relevant to any claim or defense including communications between Shumaker and Ameriprise made during the course of Shumaker's attorney-client relationship with Ameriprise, which are protected by the attorney-client privilege. Shumaker further objects on work product grounds to the extent this Request seeks internal analyses regarding the scope or terms of any engagement.

**Request No. 3**

*All Documents and Communications between Shumaker and the Individual Advisors concerning the Protocol for Broker Recruiting, including advice, analysis, guidance, summaries, memoranda, or instructions regarding compliance with the Protocol.*

**Objection.** Shumaker objects to this Request on the grounds of attorney-client privilege and work product doctrine. This Request explicitly seeks 'advice, analysis, guidance, summaries, memoranda, or instructions'—the very substance of the attorney-client relationship. Internal memoranda, legal analyses, and strategic assessments reflecting attorney mental impressions are protected work product. This request further fails to identify for what time period by its terms appears to concern advice that may have been given to the respondents in a transition from years ago to another firm under different circumstances which are not relevant to their departure in this case.

In a case in the District of Arizona, the Court has held that acts from a prior move cannot be used as a basis for determining a Protocol violation in a subsequent move: "The Court cannot logically read this language to mean that any past violation of the Protocol by an investment advisor in connection with a specific prior move creates a "taint" that infects any subsequent moves to different and unrelated employers, where no violations specific to those later moves are shown." *Hayden Royal LLC v. Hoyt*, No. CV-20-02388-PHX-JJT, 2021 WL 2637501, at *5 (D. Ariz. Jan. 22, 2021). Thus, what Respondents may have done in a prior move to Ameriprise, or whether they were provided advice about such acts, is legally immaterial to what they did in a subsequent move from Ameriprise to LPL.

**Request No. 4**

*All Documents and Communications reflecting advice or instruction Shumaker provided to the Individual Advisors concerning permissible conduct upon resignation, including but not limited to client communications, solicitation restrictions, and data retention.*

**Objection.** Shumaker objects to this Request on the grounds of attorney-client privilege and work product doctrine and that it seeks documents not relevant to any claim or defense. The Request on its face seeks 'advice or instruction' provided by counsel—quintessential privileged communications. Internal analyses, strategy documents, and draft communications reflecting attorney mental impressions constitute protected work product.

**Request No. 5**

*All Documents and Communications reflecting Shumaker's analysis of the Individual Advisors' contractual obligations to Raymond James or Ameriprise in connection with their transition, including drafts, notes, or internal memoranda.*

**Objection.** Shumaker objects to this Request as seeking attorney work product and it seeks documents not relevant to any claim or defense. The Request explicitly targets 'analysis,' 'drafts, notes, or internal memoranda' -- materials that by their nature reflect the mental impressions, conclusions, opinions, and legal theories of Shumaker attorneys. Such materials constitute opinion work product entitled to near-absolute protection and are in fact the property of Shumaker. *See In re EchoStar*, 448 F.3d at 1303. Shumaker further objects on attorney-client privilege grounds.

**Request No. 6**

*All Documents and Communications concerning the Individual Advisors' use, maintenance, or retention of client information in third-party databases (including but not limited to Redtail, Egnyte, or similar platforms).*

**Objection.** Shumaker objects to this Request as it seeks documents protected by the attorney-client privilege or constituting attorney work product and seeks documents not relevant to any claim or defense. To the best of Shumaker's knowledge, nowhere was it alleged that the Individual Advisors retention of client information in third party databases from a move from Raymond James to Ameriprise has any bearing on the instant case and whether Individual Advisors circumvented the Protocol by sending all of their client information directly to clients. Legal advice provided to the Individual Advisors regarding the permissibility of maintaining client information in third-party databases is privileged. Internal analyses regarding the legal implications of such use constitute work product.

**Request No. 7**

*All Documents and Communications reflecting advice or instruction provided to Shumaker regarding whether, how, and under what conditions the Individual Advisors could retain, access, use, or populate third-party databases in connection with their transition to Ameriprise.*

**Objection.** Shumaker objects to this Request as seeking attorney-client privileged communications and attorney work product and it seeks documents not relevant to any claim or defense. It is hard to fathom how advice given to Shumaker is relevant to the instant case. What may have happened in prior transitions legally have no bearing on what Individual Advisors did when they left Ameriprise. The Request explicitly seeks 'advice or instruction' regarding legal conditions—the core of the attorney-client relationship. Shumaker further objects that this Request is ambiguous as to the source of 'advice or instruction provided to Shumaker,' and to the extent it seeks communications from Ameriprise during the 2025 litigation representation, such communications are protected by Ameriprise's attorney-client privilege.

**Request No. 8**

*All Documents and Communications exchanged between Shumaker and Ameriprise concerning the Individual Advisors' use of third-party databases or retention of client information, including any agreements, approvals, certifications, or restrictions.*

**Objection.** Shumaker objects to this Request as it encompasses communications between Shumaker and Ameriprise during the 2025 litigation period, which are protected by the attorney-client privilege belonging to Ameriprise and it seeks documents not relevant to any claim or defense. What may have happened in prior transitions legally have no bearing on what Individual Advisors did when they left Ameriprise. Ameriprise has not authorized

waiver of this privilege. Shumaker further objects on work product grounds to the extent this Request seeks internal legal analyses or strategy documents.

**Request No. 9**

*All Documents and Communications relating to the negotiation, drafting, revision, or execution of any agreements between Ameriprise and the Individual Advisors concerning client information, data retention, or third-party databases, including drafts, redlines, comments, and internal communications.*

**Objection.** Shumaker objects to this Request on work product and attorney-client privilege grounds. Internal communications, attorney annotations on redlines, and negotiation strategy documents reflect the mental impressions and legal theories of Shumaker attorneys, are the property of Shumaker, and constitute protected work product and it seeks documents not relevant to any claim or defense. Draft documents showing attorney comments and strategic notations are entitled to heightened protection as opinion work product. Shumaker further objects to the extent this Request seeks communications with Ameriprise during the 2025 litigation period.

**Request No. 10**

*All final, executed copies of any agreements between the Individual Advisors and Ameriprise concerning client information, data retention, or third-party databases, including any attachments, exhibits, side letters, or amendments.*

**Objection.** Shumaker incorporates its General Objections. Shumaker objects to this Request as it seeks documents not relevant to any claim or defense and which are equally available to the parties to those agreements (i.e., the Individual Advisors and Ameriprise),

and to the extent compliance imposes an undue burden on a non-party when the documents can be obtained from the parties themselves.

**Request No. 11**

*All billing records, invoices, time entries, and fee statements relating to Shumaker's representation of the Individual Advisors, including any invoices submitted to Ameriprise for payment.*

**Objection.** Shumaker objects to this Request as it seeks documents not relevant to any claim or defense and is overbroad, unduly burdensome, and disproportionate to the needs of this case. Detailed time entries and billing narratives contain descriptions of attorney mental impressions, legal research topics, strategic planning, and the substance of attorney-client communications -- materials that constitute quintessential attorney work product. *See In re EchoStar*, 448 F.3d at 1303 (recognizing billing records as potential work product). The Request is further objectionable because it is not limited by time period, potentially sweeping in billing for the current litigation representation. Disclosure of detailed billing information would also reveal privileged litigation strategy, including the allocation of attorney time among legal issues and the sequence of legal research.

**Request No. 12**

*All Documents and Communications reflecting Ameriprise's consent to, or knowledge of, the Individual Advisors' retention or use of client information in third-party databases.*

**Objection.** Shumaker objects to this Request as it encompasses communications between Shumaker and Ameriprise during the 2025 litigation period, which are protected by Ameriprise's attorney-client privilege and it seeks documents not relevant to any claim or defense. Shumaker further objects on work product grounds to the extent this Request seeks internal legal analyses regarding Ameriprise's knowledge or consent.

**Request No. 13**

*All Documents and Communications to, from, or concerning Michael S. Taaffe relating to any of the Individual Advisors, including but not limited to his role in their transition from Raymond James to Ameriprise, his designation as their attorney in any correspondence, and any subsequent involvement in Ameriprise's decision to assert claims against them.*

**Objection.** Shumaker objects to this Request as overbroad and disproportionate to the needs of this case and it seeks documents not relevant to any claim or defense. The Request is not limited by time period, and the phrase 'concerning' is particularly expansive and undefined. As drafted, this Request could encompass any document in Shumaker's files that merely mentions Mr. Taaffe in any context, regardless of relevance to the claims or defenses in this arbitration. Shumaker further objects that documents reflecting Mr. Taaffe's 'involvement in Ameriprise's decision to assert claims' against the Individual Advisors are protected by Ameriprise's attorney-client privilege and by work product doctrine, as they relate to the 2025 litigation representation. 9 U.S.C. § 7 limits subpoena authority to documents "material as evidence in the case," not tangentially related to any party or witness.

**Request No. 14**

*All Documents and Communications relating to Shumaker's decision to represent Ameriprise in asserting claims against the Individual Advisors and LPL, including conflict analyses, waivers, or internal discussions concerning prior representations.*

**Objection.** Shumaker objects to this Request on the basis of attorney-client privilege and work product doctrine and it seeks documents not relevant to any claim or defense. The decision to accept a new client engagement, internal conflict-of-interest analyses, ethical

screening memoranda, and discussions regarding prior representations are quintessential attorney work product reflecting the Firm's internal legal and ethical processes and protected mental impressions. *See In re EchoStar*, 448 F.3d at 1303. Moreover, communications with Ameriprise relating to the decision to undertake representation are protected by Ameriprise's attorney-client privilege. Ameriprise has not authorized waiver of this privilege. These documents will be withheld in their entirety and identified on a privilege log.

**<u>Request No. 15</u>**

*All Documents reflecting the identification, collection, review or return of files belonging to the Individual Advisors following Shumaker's withdrawal, including inventories, privilege logs, or explanations for withheld materials.*

**Objection.** Shumaker objects to this Request as it seeks documents reflecting internal review processes, attorney assessments regarding the scope of client files, and legal analyses regarding the return of materials, which constitute attorney work product and it seeks documents not relevant to any claim or defense. Shumaker further objects to the extent this Request seeks privilege logs prepared in connection with the return of files, which themselves may reflect attorney mental impressions regarding the nature and scope of privileged materials. *See* Fla. Bar R. 4-1.16(d).

**<u>RESERVATION OF RIGHTS</u>**

Shumaker expressly reserves all rights to seek judicial relief, including but not limited to a motion to quash or modify the Subpoena, in the event the Panel overrules any objection set forth herein or orders production of materials that Shumaker contends are protected by the attorney-

client privilege, work product immunity, or other applicable protection, or Respondents otherwise seek to enforce the subpoena through the judiciary.

Shumaker further reserves the right to supplement or amend these objections as additional facts or circumstances warrant, and to assert any additional objections or privileges that may become apparent upon further review of the documents sought by the Subpoena.

Nothing in these objections shall be construed as a waiver of any applicable privilege, immunity, or protection, whether or not specifically identified herein.

## CONCLUSION

For the foregoing reasons, non-party and non-FINRA member Shumaker, Loop & Kendrick LLP respectfully requests that the Panel sustain Shumaker's objections in their entirety, order Respondents to bear the reasonable costs of addressing the Subpoena, and relieve Shumaker of any obligations purportedly imposed by the Subpoena. In the alternative, Shumaker requests a hearing before the full three-member Panel, rather than the Chairman alone, consistent with the arguments set forth above regarding the impropriety of a single-arbitrator proceeding.

Dated: August 7, 2026

Respectfully submitted,

SHUMAKER, LOOP & KENDRICK, LLP
240 South Pineapple Avenue
Post Office Box 49948
Sarasota, Florida 34230-6948
(941) 366-6660
(941) 366-3999 (fax)

By: *_/s/ Jarrod Malone_*

**Jarrod J. Malone, Esq.**
FL Bar No. 10595
**Michael S. Taaffe, Esq.**
FL Bar No. 490318
**Brandon M. Taaffe, Esq.**
FL Bar No. 118932

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on the FINRA Director, Richard Berry at Richard.Berry@finra.org, the FINRA Case Administrator, and all counsel of record via email as follows:

Alan Baskin, Esq.
Alexander H. Park, Esq.
Weiss Brown
6263 N. Scottsdale Road, Suite 340
Scottsdale, AZ 85250
alan@weissbrown.com
alex.park@weissbrown.com
Counsel for Respondents Jared B. Roskelley,
Kyle L. Robertson, and Matthew J. Tinyo

Cheryl L. Haas, Esq.
McGuireWoods LLP
1075 Peachtree Street N.E., 35th Floor
Atlanta, GA 30309-3900
chaas@mcguirewoods.com
Counsel for Respondent LPL Financial LLC

Alexander M. Madrid, Esq.
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
amadrid@mcguirewoods.com
Counsel for Respondent LPL Financial LLC

Brittney Angelich, Esq.
McGuireWoods, LLP
2601 Olive Street, Suite 2100
Dallas, TX 75201
bangelich@mcguirewoods.com
Counsel for Respondent LPL Financial LLC

On this 7th day of August, 2026.

By: *\/s/ Jarrod J. Malone*
**Jarrod J. Malone, Esq.**
FL Bar No. 10595

# Exhibit E

# ORDER

**Submitted By:** Richard Mahrle (On behalf of the arbitration panel)
**Submitted Date:** 08/24/2026 10:35:10 AM ET

**Case ID & Parties:**
***FINRA Dispute Resolution Services***
ORDER

**Case Number:** 25-00296

**In the Matter of the Arbitration Between**

| Claimant(s) | VS | Respondent(s) |
|---|---|---|
| Ameriprise Financial Services, LLC | | LPL Financial LLC |
| | | Jared B Roskelley |
| | | Kyle L Robertson |
| | | Matthew J Tinyo |

## PREHEARING CONFERENCE

1. Was a prehearing conference held in the above captioned matter?
- ○ Yes
- ● **No**

## ISSUES ADDRESSED

2. Issues addressed: (i.e., name of motion or request, by which party)
- ● **The following submissions have been addressed:**

***Objections to the subpoena issued by the panel to non-party Shumaker Loop & Kendrick dated July 17, 2026. Objections were filed by both Shumaker and Claimant Ameriprise. Repondents filed responses supporting the issuance of the subpoena.***

## ORDER DECIDED BY

3. Decided by:
- ○ Chairperson
- ● **Panel**

## RULINGS

4. Rulings:

● **After considering the parties' submissions (and oral arguments, if prehearing conference held), the Panel/Chairperson rules as follows:**

| |
|---|
| ***The objections to the subpoena issued to Shumaker Loop & Kendrick are overruled. It should be noted that in issuing the subpoena, the panel found that the materials and testimony being sought were both relevant and material to issues that have been raised in this arbitration.*** |

5. Order compliance date:

○ The parties should comply with this order by ______

● **Not applicable**

**ASSESSMENT OF FEES**

**NOTE: If no prehearing conference was held or the motion is not discovery related, no fee will be incurred by the parties, even if a fee is assessed below.**

6. Cost of prehearing conference or discovery-related motion:

● **If the parties settle this matter with no further hearings, the forum fees for this prehearing conference (or discovery-related motion decided without a prehearing conference) are assessed as follows:**

***100*% to Claimant(s), jointly and severally**

**______% to Respondent(s), jointly and severally**

**______% assessed to ______**

**______% assessed to ______**

**______% assessed to ______**

**______% assessed to ______**

○ Not applicable

**ATTACHMENTS**

There are no attached documents.

# Exhibit F

| | |
|---|---|
| **From:** | Madrid, Alexander M. |
| **To:** | dcanonico@shumaker.com |
| **Cc:** | Alan Baskin; alex.park@weissbrown.com; Haas, Cheryl L.; jmalone@shumaker.com; btaaffe@shumaker.com; mtaaffe@shumaker.com; jsenior@shumaker.com |
| **Subject:** | RE: FINRA Case 25-00296 Ameriprise Financial Services, LLC vs. Jared Bryce Roskelley, Kyle Lee Robertson, Matthew Joseph Tinyo and LPL Financial LLC |
| **Date:** | Monday, August 24, 2026 6:25:54 PM |

Counsel,

As you are aware, the Panel has overruled Shumaker's objections to the Subpoena Duces Tecum. We write to confirm whether Shumaker intends to comply fully with the Subpoena by having a representative appear at the November 6, 2026 hearing in Sarasota, Florida and bring with them all documents called for in Schedule A of the Subpoena. To the extent Shumaker continues to assert privilege over any document, the Subpoena further requires the Shumaker representative to bring with them a privilege log as well as the purportedly privileged documents for *in camera* review if the Panel deems it necessary.

Accordingly, please confirm in writing, by no later than **close of business on August 27**, that Shumaker will:

1. Appear at the November 6, 2026 hearing in Sarasota, Florida as directed by the Subpoena;
2. Produce all documents responsive to the Subpoena's fifteen categories; and
3. As to any documents withheld on privilege grounds, produce a privilege log identifying each withheld document and bring the withheld documents to the hearing for *in camera* review by the Panel if necessary.

In light of Shumaker's prior objections and position taken regarding the Subpoena, we will construe any response other than express, unconditional confirmation of full compliance — including silence, a qualified or conditional response, or a reservation of the right to seek judicial relief in lieu of compliance — as a refusal to obey the Subpoena within the meaning of 9 U.S.C. § 7.

Thank you,
Alex

**Alexander M. Madrid**
Partner
McGuireWoods LLP
T: +1 412 667 7919 | M: +1 412 398 0564
amadrid@mcguirewoods.com

---

**From:** Cavanaugh, Brooke <Brooke.Cavanaugh@finra.org>
**Sent:** Monday, August 24, 2026 4:23 PM

**To:** dcanonico@shumaker.com
**Cc:** Alan Baskin <alan@weissbrown.com>; alex.park@weissbrown.com; Haas, Cheryl L. <CHaas@mcguirewoods.com>; Madrid, Alexander M. <AMadrid@mcguirewoods.com>; Angelich, Brittney M. <bangelich@mcguirewoods.com>; jmalone@shumaker.com; btaaffe@shumaker.com; mtaaffe@shumaker.com; jsenior@shumaker.com
**Subject:** FINRA Case 25-00296 Ameriprise Financial Services, LLC vs. Jared Bryce Roskelley, Kyle Lee Robertson, Matthew Joseph Tinyo and LPL Financial LLC

**EXTERNAL EMAIL; use caution with links and attachments**

Apologies. Please disregard the subject line below referencing the incorrect case. This order is in reference to **FINRA Case 25-00296 Ameriprise Financial Services, LLC vs. Jared Bryce Roskelley, Kyle Lee Robertson, Matthew Joseph Tinyo and LPL Financial LLC**

---

**From:** Cavanaugh, Brooke
**Sent:** Monday, August 24, 2026 1:21 PM
**To:** 'dcanonico@shumaker.com' <dcanonico@shumaker.com>
**Cc:** Alan Baskin <alan@weissbrown.com>; alex.park@weissbrown.com; 'chaas@mcguirewoods.com' <chaas@mcguirewoods.com>; 'amadrid@mcguirewoods.com' <amadrid@mcguirewoods.com>; 'bangelich@mcguirewoods.com' <bangelich@mcguirewoods.com>; 'jmalone@shumaker.com' <jmalone@shumaker.com>; 'btaaffe@shumaker.com' <btaaffe@shumaker.com>; 'mtaaffe@shumaker.com' <mtaaffe@shumaker.com>; 'jsenior@shumaker.com' <jsenior@shumaker.com>
**Subject:** FINRA Case ID 26-00263 Kevin Lee Ehlers vs. Ameriprise Financial Services, LLC

Good afternoon,

Please see attached.

Thank you,
Brooke

Brooke Cavanaugh
Senior Case Administrator
FINRA Dispute Resolution Services
Direct: (213) 613-2627
Brooke.Cavanaugh@finra.org | www.finra.org

Confidentiality Notice:: Information contained in or attached to this email may be non-public, privileged, or confidential. Do not use, save, or copy any of that information, and do not share it with anyone else, unless you are the intended recipient. The sender has not authorized you to save, copy, use, or share any information provided to you in error. If the

sender sent you this email or any attachment by mistake, please let the sender know by replying to this email and then deleting it.

---

*This e-mail from McGuireWoods may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and delete immediately without reading or forwarding to others.*

# Exhibit G

Court Stamp Here

# RETURN OF SERVICE

| | |
|---|---|
| Court<br>**Non-Court Action in a Florida Case** | |
| Plaintiff<br>**AMERIPRISE FINANCIAL SERVICES, LLC** | Case #<br>**25-00296** |
| Defendant<br>**JARED BRYCE ROSKELLEY; et al.** | Hearing Date<br>**11/06/2026** |
| Person to be Served<br>**Shumaker Loop & Kendrick LLP c/o Jarrod Malone, Esq.** | Came to Hand Date/Time<br>**9/17/2026 12:46 PM** |
| Manner of Service<br>**Corporate** | Service Date/Time<br>**9/18/2026 2:24 PM** |
| Documents<br>**Servee Check for Shumaker Loop & Kendrick LLP c/o Jarrod Malone, Esq. ($52.20); ARBITRATION SUMMONS AND SUBPOENA TO TESTIFY AND PRESENT DOCUMENTARY EVIDENCE AT AN ARBITRATION HEARING** | Service Fee<br>**$198.42** |

On **9/18/2026** at:
**240 S Pineapple Ave 9th Floor, Sarasota, FL 34236** I served **Shumaker Loop & Kendrick LLP c/o Jarrod Malone, Esq.** by:

Leaving **1** copy(ies) of this process with **Kristin Bowen**, a person authorized to accept service and informed that person of the contents thereof, with the date and hour of service endorsed thereon by me.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to Kristin Bowen who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a brown-haired white female contact 35-45 years of age, 5'4"-5'6" tall and weighing 120-140 lbs with glasses.**

Notary not required pursuant to F.S. 92.525(2).

I am over 18 years of age, not a party to nor interested in this case and I have the proper authority in the jurisdiction where I effected service, pursuant to Florida Statute Chapter 48. Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

[signature] 09/18/2026

Raymond K Feliciano | Process Server ID | Date Executed